[No. C000310. Third Dist. Oct. 20, 1987.]

HOWARD KENNETH ELROD, JR., Plaintiff and Respondent, v. OREGON CUMMINS DIESEL, INC., Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to rule 976.1 of the California Rules of Court, all portions of this opinion shall be published except part I of the Discussion.

694

COUNSEL

Thornton & Franklin and Roberta Lee Franklin for Defendant and Appellant.

Bostwick & Tehin, Nikolai Tehin and Pamela J. Stevens for Plaintiff and Respondent.

OPINION

**SIMS, J.**—Code of Civil Procedure section 998 sets forth procedures whereby a party to a civil lawsuit can make a pretrial offer to settle the case.[1] The statute further prescribes conditions whereby the offeror may

---

[1] All further statutory references are to the Code of Civil Procedure. As amended in 1986 (Stats. 1986, ch. 540, § 14), section 998 provides: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of * * * trial * * *, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time.

"(*1*) If *the* offer is accepted, the offer with proof of acceptance shall be filed and the clerk or the judge shall enter judgment accordingly.

"(*2*) If *the* offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial.

"*(3) For purposes of this subdivision, a trial shall be deemed to be actually commenced at the beginning of the opening statement of the plaintiff or counsel, and if there is no opening statement, then at the time of the administering of the oath or affirmation to the first witness, or the introduction of any evidence.*

"(c) If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his *or her* costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant.

"(d) If an offer made by a plaintiff is *not* accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs.

"(e) Police officers shall be deemed to be expert witnesses for the purposes of this section; plaintiff includes a cross-complainant and defendant includes a cross-defendant. Any judgment entered pursuant to this section shall be deemed to be a compromise settlement.

"(f) The provisions of this chapter shall not apply to an offer which is made by a plaintiff in an eminent domain action.

"(g) The costs for services of expert witnesses for trial under subdivisions (c) and (d) shall not exceed those specified in Section 68092.5 of the Government Code." (Asterisks and italics indicate 1986 amendments.)

recover costs and expert witness fees if the offer is not accepted and the offeror obtains a judgment at least as favorable as that proposed in the offer. In *Wear* v. *Calderon* (1981) 121 Cal.App.3d 818 [175 Cal.Rptr. 566], Division Three of the Second District concluded, ". . . a good faith requirement must be read into section 998. In other words, the pretrial offer of settlement required under section 998 must be realistically reasonable in the circumstances of the particular case. . . ." (P. 821.) In this case, we conclude that by reenacting section 998 without pertinent change in light of *Wear*, the Legislature has approved and adopted *Wear's* interpretation of section 998.[2] We also discuss how trial courts should determine whether a section 998 offer meets the test of good faith.

## PROCEDURAL HISTORY

In 1979, plaintiff Howard Kenneth Elrod was severely injured and rendered a paraplegic in an accident that occurred while he was driving a logging truck. He filed a lawsuit against defendant Oregon Cummins Diesel, Inc. (Cummins), a company that had repaired the Jacobs engine brake system on the truck. He also sued General Trailer Company (General) for defective design of the trailer's brakes. General, in turn, cross-complained against Jacobs Manufacturing Company (Jacobs).

On May 22, 1984, Cummins made a section 998 offer of settlement to plaintiff for $15,001. The offer expired without having been accepted 30 days after it was made pursuant to the command of the statute. (§ 998, subd. (b)(2).)

On February 4, 1985, plaintiff entered into a settlement with General and Jacobs in the combined amount of $500,000. Of this total, General was to pay $475,000 and Jacobs $25,000. The trial court determined the offers were made in good faith and dismissed General and Jacobs from the lawsuit.

Plaintiff's case went to trial against Cummins, the one remaining defendant. At the beginning of trial, the parties stipulated Cummins was entitled to an offset from any verdict against it for amounts received in the settlements with General and Jacobs ($500,000) and, should plaintiff's employer be found negligent, for an additional $137,504.04 in workers' compensation benefits paid to the date of trial.

The jury found plaintiff suffered damages in the amount of $1,183,350. The jury determined plaintiff was 60 percent at fault, his employer 30

---

[2] In an unpublished portion of this opinion, we conclude Cummins's objection to the judge who ruled on the motion to tax costs was untimely.

percent at fault and Cummins 10 percent at fault. Thus, after a deduction for workers' compensation benefits, the damages assessed against Cummins were $335,836. (See *Aceves* v. *Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 512 [156 Cal.Rptr. 41, 595 P.2d 619].) However, since Cummins was entitled to a $500,000 credit against the verdict for the General/Jacobs settlement, the net judgment was that plaintiff take nothing from Cummins.

The parties each filed memoranda of costs. Cummins filed a motion to tax plaintiff's costs.[3] Cummins asserted plaintiff failed to obtain a judgment more favorable than Cummins's statutory offer of settlement and, consequently, Cummins should recover costs as well as its expert witness fees from the date of its offer. Additionally, Cummins argued plaintiff was not entitled to recover any costs. (§ 998, subd. (c).)

The trial court ruled Cummins's $15,001 offer was a token one that failed to qualify as a valid section 998 offer. The court awarded plaintiff his court costs as the prevailing party pursuant to former section 1032 (repealed Stats. 1986, ch. 377, § 5). Cummins appeals; we shall affirm the judgment.

## DISCUSSION

### I*

. . . . . . . . . . . . . . . . . . .

### II

*Plaintiff was properly awarded his court costs pursuant to former section 1032*

■ Cummins argues that subdivision (c) of section 998 cuts off plaintiff's entitlement to section 1032 costs and makes Cummins eligible to recover its own costs, including expert witness fees. (See fn. 1, *ante.*) Cummins's contention rests upon the fact it made a pretrial offer of settlement in the amount of $15,001 and ultimately obtained a more favorable judgment. However, we think the trial court ruled correctly that "The . . . $15,001.00 settlement offer in a case in which damages are ultimately determined to be

---

[3] Cummins has not contended plaintiff was precluded from challenging Cummins's costs by plaintiff's failure to file a motion to tax costs. Assuming such a motion should have been made, its function was ably served by plaintiff's memoranda of points and authorities specifying why Cummins was not entitled to any costs or expert fees as a matter of law.

\* See footnote, *ante*, page 692.

in excess of $1,000,000.00, is a token or nominal offer that does not satisfy the requirements of CCP § 998."

As we have noted, the court in *Wear* v. *Calderon, supra,* 121 Cal.App.3d 818 concluded "a good faith requirement must be read into section 998." (P. 821.) The *Wear* court reasoned a contrary conclusion would actually frustrate section 998's purpose of encouraging pretrial settlements. (Pp. 821-822.)

*Wear* involved only the question whether expert witness fees could be awarded. (*Ibid.*; see also *Pineda* v. *Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 62-63 [169 Cal.Rptr. 66].) Subdivision (d) of section 998 provides such fees may be awarded in the discretion of the court. Although the *Wear* court could have resolved the case by holding a trial court properly exercises its discretion in denying expert fees where a party's section 998 settlement offer is not made in good faith, that is not the route the court chose to follow. Rather, as we have seen, the court clearly adopted a more fundamental approach, interpreting the statute so that only good faith offers qualify as valid offers under section 998.

In this case, we have no occasion to determine whether we would have read a requirement of good faith into section 998 as did the *Wear* court when it faced the problem in 1981. No case has quarreled with *Wear's* interpretation of the statute. In 1986, the Legislature amended and reenacted section 998 without changing the statutory language *Wear* had interpreted. (Stats. 1986, ch. 540; see fn. 1, *ante*.) ■ By its 1986 amendment and reenactment of section 998 without pertinent change, the Legislature is deemed to have approved *Wear's* interpretation of the statute. (*Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721, 734-735 [180 Cal.Rptr. 496, 640 P2d 115, 30 A.L.R.4th 1161], cert. den. (1982) 459 U.S. 858 [74 L.Ed.2d 111, 103 S.Ct. 129]; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 777-778 [237 Cal.Rptr. 677].) We therefore conclude the Legislature intends that only good faith settlement offers qualify as valid offers under section 998.

But when is a section 998 offer made in good faith? *Wear* concludes a good faith offer "must be realistically reasonable under the circumstances of the particular case." (*Wear, supra,* 121 Cal.App.3d at p. 821; see *Pineda* v. *Los Angeles Turf Club, Inc., supra,* 112 Cal.App.3d at p. 63.) It must carry with it some reasonable prospect of acceptance. (*Wear, supra,* at p. 821.) Although *Wear* did not articulate its reason for adopting this test of good faith, we agree with it.

■ Section 998 should be interpreted so as to effectuate its purpose of encouraging the settlement of lawsuits before trial. (*T. M. Cobb Co.* v.

*Superior Court* (1984) 36 Cal.3d 273, 277, 280 [204 Cal.Rptr. 143, 682 P.2d 338].) Section 998 achieves its aim by punishing a party who fails to accept a *reasonable* offer from the other party. (*Culbertson* v. *R. D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 711 [235 Cal.Rptr. 510]; *Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 449 [159 Cal.Rptr. 469].) An offeree cannot be expected to accept an unreasonable offer. Hence, any subsequent punishment of the offeree for nonacceptance does not further the purpose of section 998, because the offeree would not have acted differently at the time of the offer despite the threat of later punishment. In these circumstances, later punishment of the offeree merely provides a windfall to the offeror and does not encourage settlements.

Whether a section 998 offer is reasonable must be determined by looking at circumstances when the offer was made. (Cf. *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499, 502 [213 Cal.Rptr. 256, 698 P.2d 159].) However, the reasonableness of an offer depends upon the information used to evaluate it. In many cases, a plaintiff and a defendant will not have the same information when an offer is made. For this reason, the reasonableness of an offer may lie in the eye of its beholder.

As a general rule, the reasonableness of a defendant's offer is measured, first, by determining whether the offer represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial, discounted by an appropriate factor for receipt of money by plaintiff before trial,[5] all premised upon information that was known or reasonably should have been known *to the defendant*. It goes without saying that a defendant is not expected to predict the exact amount of his exposure. If an experienced attorney or judge, standing in defendant's shoes, would place the prediction within a range of reasonably possible results, the prediction is reasonable. (Cf. *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 874 [239 Cal.Rptr. 626, 741 P.2d 124].)

If the offer is found reasonable by the first test, it must then satisfy a second test: whether defendant's information was known or reasonably should have been known to plaintiff. This second test is necessary because the section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one. If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer.

Thus, suppose defendant's files contain "dynamite" information likely to insulate it from liability. However, the information is subject to a privilege and is not discoverable by plaintiff. Defendant intends to waive the privilege

---

[5]This factor would include the defendant's ability to satisfy a judgment.

and use the information at trial. Defendant makes a low offer premised on its exclusive knowledge; an objective appraisal of other circumstances, including defendant's likely liability for damages, would indicate the offer is patently unreasonable. Unless defendant communicates its exclusive knowledge to plaintiff with its offer, the offer is not reasonable and does not qualify as a valid section 998 offer. Since defendant knew or reasonably should have known plaintiff lacked information necessary to evaluate the offer, defendant did not make the offer in good faith for purposes of section 998.

However, we emphasize the reasonableness of defendant's offer does not depend on information actually known to plaintiff but rather on information that was *known or reasonably should have been known*. The latter standard is an objective one: would a reasonable person have discovered the information? A contrary conclusion would make defendant's good faith incongruously depend on plaintiff's subjective knowledge and would reward plaintiffs who are dilatory in pursuing discovery. Thus, if a defendant makes a low offer shortly before trial based upon potent evidence likely to insulate defendant from liability, and if the evidence was reasonably available to plaintiff, defendant's offer may qualify as a valid section 998 offer even though plaintiff did not in fact know of the information because he failed to investigate or pursue discovery.

■ It is the general rule that where a party shows a prima facie entitlement to costs, the burden is on an objector to prove the costs should be disallowed. (*Meyer* v. *City of San Diego* (1901) 132 Cal. 35, 36 [64 P. 124]; *City of Downey* v. *Gonzales* (1968) 262 Cal.App.2d 563, 572 [69 Cal.Rptr. 34]; 7 Witkin, Cal. Procedure, (3 ed. 1985) Judgment, § 124, pp. 550-551.) Where, as here, the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable and the offeror is eligible for costs as specified in section 998. The burden is therefore properly on plaintiff, as offeree, to prove otherwise.

■ Finally, whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court. (See *Tech-Bilt, Inc.* v. *Woodward-Clyde Associates, supra,* 38 Cal.3d at p. 502.)

■ In this case, no abuse of discretion has been shown. The trial court could conclude plaintiff carried his burden of proving that, at the time the offer was made, it was not a reasonable prediction of the amount Cummins would have to pay plaintiff following a trial.

The trial court was entitled to infer unreasonableness from the jury verdict. The jury ultimately found plaintiff's damages exceeded $1 million; as a

result, the court could infer that, at the time of the offer, Cummins knew of the extensive injuries for which it might be found liable. Moreover, the jury concluded Cummins was 10 percent at fault, a finding making Cummins directly liable for damages almost eight times greater than the settlement offer. Furthermore, through principles of joint and several liability, Cummins's liability, as reflected in the verdict, exceeded its offer by more than 20 times after deduction for workers' compensation benefits.

The jury verdict resulted in a net judgment of zero because of the deduction for the General/Jacobs settlement. However, the trial court could conclude the settlement played no part in Cummins's calculation of its offer, since the settlement occurred eight and one-half months after the offer. No evidence before the court suggested Cummins relied on the prospects of the General/Jacobs settlement when Cummins made its offer.

In the trial court, Cummins argued the jury verdict was not an accurate gauge of its liability because the settling defendants were not then in the case and the jury was not asked to determine their proportionate liability. However, the trial court could conclude that since the codefendants were not in the case, the assertion was speculative.

Cummins also argues its offer must qualify as one made in good faith because Jacobs's $25,000 offer so qualified. Putting aside questions of Jacobs's prospects of liability, the fact remains that when plaintiff accepted Jacobs's offer, plaintiff was assured of receiving an additional $475,000 from General (as a part of the settlement) which would reduce the amount of any judgment. This fact alone distinguishes the circumstances of the Cummins and Jacobs offers.

Cummins also asserted its low offer was justified by a historic pattern of low verdicts in Siskiyou County. However, we believe the extent to which this factor could reasonably affect the offer was a matter properly left to the determination of the local trial court, which is in the best position to evaluate an alleged pattern of jury verdicts within its jurisdiction.

Cummins has never suggested its low offer was influenced by potent evidence limiting its exposure or by a lack of insurance coverage or other inability to respond in damages.

The trial court could properly conclude Cummins's $15,001 offer, when made, was an unreasonable prediction of the amount of money Cummins would have to pay plaintiff following a trial and was still unreasonable when discounted for plaintiff's receipt of settlement funds before trial. The trial court did not abuse its discretion when it concluded Cummins's settlement

offer was a token offer that did not satisfy the requirements of section 998. Whether we would have made the same determination in the first instance is immaterial, since this court reviews the trial court's exercise of *discretion*.

Cummins also contends plaintiff cannot recover his ordinary court costs under former section 1032[6] because plaintiff's net recovery was zero after amounts received in settlement were deducted from the verdict. However, in *Syverson* v. *Heitmann* (1985) 171 Cal.App.3d 106 at pages 112-114 [214 Cal.Rptr. 581] we recently rejected this precise contention. ■ We there held a plaintiff could recover costs upon a monetary verdict in his favor even though the ultimate judgment was zero after deductions for settlements. (*Ibid.*) We have no reason to reconsider *Syverson* and shall follow it here. The trial court properly awarded plaintiff his costs of suit. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Carr, J., concurred.

---

[6]In 1986, former section 1032 was repealed (Stats. 1986, ch. 377, § 5) and a new section 1032 was added. (Stats. 1986, ch. 377, § 6.) The parties agree the former statute should apply. Since neither party asserts the new statute should apply, we shall adjudicate the dispute upon the assumption the old statute governs the award of costs. Former section 1032 provided in pertinent part: "In the superior court, . . . costs are allowed of course: [¶] (a) To plaintiff upon a judgment in his favor: in an action for the recovery of . . . money or damages; . . ." (Stats. 1957, ch. 1172, § 1, p. 2464.)