[Nos. C027518. Third Dist. Apr. 22, 1999.]

ROBIN WILSON, Plaintiff and Respondent, v.
WAL-MART STORES, INC., Defendant and Appellant.

[No. C027765. Third Dist. Apr. 22, 1999.]

ROBIN WILSON, Plaintiff and Appellant, v.
WAL-MART STORES, INC., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of that portion of the "DISCUSSION" headed "Wal-Mart's Appeal."

COUNSEL

Tanke & Willemsen, Tony J. Tanke, Karen Bautista Hobin, Dennis Shore; Machado & Cousins and John J. Machado for Plaintiff and Appellant and for Plaintiff and Respondent.

Phillips & Spallas, Robert K. Phillips, Diane J. Mason and Camille Calvert for Defendant and Appellant and for Defendant and Respondent.

OPINION

**HULL, J.**—Plaintiff Robin Wilson slipped in a puddle of water near the garden department of defendant Wal-Mart Stores, Inc. (Wal-Mart). Wal-Mart appeals from a judgment entered following jury trial in favor of Wilson, contending (1) the jury's award of economic damages is not supported by substantial evidence; and (2) the verdict was the result of jury prejudice inflamed by the misconduct of Wilson's counsel during closing argument.

Wilson also appeals, challenging a postjudgment order denying her request for expert witness fees under Code of Civil Procedure section 998 and prejudgment interest under Civil Code section 3291.

We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

We state the facts in the manner most favorable to the judgment. (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 492, fn. 1 [102 Cal.Rptr. 795, 498 P.2d 1043].) Given the parties' respective contentions on appeal, our recitation of the circumstances of Wilson's injury can be brief.

On July 4, 1992, Wilson slipped in a puddle of water near the garden department of the Stockton Wal-Mart store and wrenched her back. She had been pushing a shopping cart slowly through the department near the doorway between the garden and patio departments, looking at the merchandise. Seconds before she fell, Wilson noticed that her nephew was standing in a puddle of water, and warned him not to slip.

A garden department employee, Sandra Boda, testified that, on the day Wilson fell, she herself had "stumbled" in "a small stream of water" leaking from a fountain there; because she did not know how to turn off the fountain, Boda placed plastic cones on the wet floor. When another customer later reported water on the floor, Boda failed to investigate because she thought she "knew" what part of the floor was wet. She did not notify any other Wal-Mart employee about the water. Another garden department employee who worked on the day Wilson fell testified that the spigot by which garden department plants were watered would leak if the hose was not screwed on correctly. However, he had not seen water on the floor that day. The spigot was located immediately adjacent to the spot where Wilson fell.

As a result of her fall, Wilson herniated a disk in her lower back, and underwent surgery to remove the disk material in April 1993. The surgery was not successful, in that the herniated disk material remained in her spine after the operation and continued to irritate a nerve root, causing constant pain.

After the surgery, Wilson sued Wal-Mart for negligence and premises liability.[1]

---

[1]The claim of Wilson's husband for loss of consortium was dropped sometime before trial.

A surgeon specializing in spinal injuries, Dr. Montesano, testified on Wilson's behalf at trial that she will need a second, "much more complicated" spinal operation, which he estimated will cost about $60,000. An orthopedist retained by Wal-Mart agreed that Wilson may need a second surgery, that she did not "improve particularly" with the first surgery, and that the case was "very complicated."

Dr. Montesano testified that a second surgery would have an 80 percent chance of success, although patients whose surgeries are "successful" often require pain management therapy, or additional surgery. For the 20 percent of patients whose conditions do not improve with surgery, Dr. Montesano estimated the costs of further corrective procedures at between $100,000 and $600,000 "depending on what happen[ed]," and opined that $600,000 is a "reasonable figure" for a patient who has "totally failed." The complications arising from an unsuccessful surgery could range from possible infection, which can require "multiple trips back to the operating room," to paralysis.

Wilson also introduced evidence of her loss of income after the fall. Before the injury, Wilson operated a licensed daycare center, "Robin's Nest," in her home. She received the daycare center license in 1990 or 1991 and closed the business in March 1993 just before her back surgery. Her tax returns for that period show net annual taxable income of $3,000, but because her home-based business allowed a number of deductions, her gross income from Robin's Nest was close to $6,000 in 1991, and $9,000 in 1992. At the time of trial, Wilson had not reopened the daycare center and did not work outside the home. Her lifetime work history included working as a receptionist for $7,000 per year and performing setup and janitorial work for a school at $8,000 per year.

By special verdict, the jury found Wal-Mart to have been negligent and awarded Wilson $230,000 in economic damages and $120,000 in noneconomic damages, for a total of $350,000. Because the jury also found that Wilson's own negligence contributed 50 percent to her injuries, judgment was entered in Wilson's favor in the amount of $175,000.

Wal-Mart moved for a new trial, on the grounds the jury's verdict was excessive and unsupported by substantial evidence. The trial court denied the motion, ruling that ". . . the verdict of the jury is within the parameters of the evidence."

Additional facts appear as necessary in the discussion.

DISCUSSION

*Wal-Mart's Appeal*\*

. . . . . . . . . . . . . . . . . . . . . . . .

*Wilson's Appeal*

On February 3, 1995, in accordance with Code of Civil Procedure section 998 (further section references are to the Code of Civil Procedure unless otherwise designated), Wilson served on Wal-Mart an offer to compromise for $150,000, each side to bear its own costs and attorney fees. Wal-Mart made no response to the offer within the 30-day period provided by that statute; accordingly, the offer was deemed rejected. (§ 998, subd. (b).)[5]

On May 20, 1996, Wilson served a second section 998 offer on Wal-Mart; this time, the settlement price was $249,000, with each side to bear its own costs and fees. That offer also was rejected by Wal-Mart's failure to accept it within the statutory period.

Following the jury verdict of $175,000 in her favor, Wilson filed a memorandum of costs in the amount of $102,512.38, the largest components of which were (1) a claim for prejudgment interest in the amount of $40,514.25, calculated from "2/3/95 to 5/29/97," i.e., from the date of her first statutory offer to the date of the judgment to which Wilson claimed she was entitled by operation of section 998 and Civil Code section 3291;[6] and (2) a claim for $30,411.18 for "Models, blowups, and photocopies of exhibits."

---

\*See footnote, *ante*, page 382.

[5]At all times relevant on appeal, former section 998 provided in pertinent part: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section.

"(b) Not less than 10 days prior to commencement of trial, any party may serve an offer in writing upon any other party to the action to allow judgment to be taken in accordance with the terms and conditions stated at that time. [¶] . . . [¶] (2) If the offer is not accepted prior to trial or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial. . . .

" . . . . . . . . . . . . . . . . . .

"(d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs."

[6]Civil Code section 3291 provides: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of the other person, corporation, association, or partnership, and whether the injury was fatal or

 Wal-Mart moved to tax costs, objecting that Wilson may not recover prejudgment interest or expert fees because she "failed to obtain a judgment more favorable than the effective CCP § 998 offer." Wal-Mart argued that Wilson's second statutory settlement offer of $249,000 effectively "extinguished" her first offer and, because the $175,000 judgment does not exceed her $249,000 offer, Wilson is entitled to recover neither expert fees nor prejudgment interest computed from the date of the first section 998 offer.[7]

In support of her cost bill, Wilson responded that her "first CCP § 998 offer is controlling for all purposes," on the ground that contract law principles to the contrary do not apply to section 998 offers where, as here, those principles are inconsistent with the statutory purpose of encouraging settlement.[8]

After hearing, the trial court granted Wal-Mart's motion to tax the "expert witness fees pursuant to CCP §998 and pre-judgment interest pursuant to Civil Code §3291 based on the finding that Plaintiff's second CCP §998 offer in the amount of $249,000 superseded and extinguished Plaintiff's first CCP §998 offer in the amount of $150,000 for the purposes of both CCP §998 and Civil Code § 3291."

Wilson appeals from that order.

She first asserts that, under the cost-shifting provisions of section 998, the consequences of Wal-Mart's having rejected her first statutory offer are not "nullified" by the second section 998 offer.

---

otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section.

"If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment.

"This section shall not apply to a public entity, or to a public employee for an act or omission within the scope of employment, and neither the public entity nor the public employee shall be liable, directly or indirectly, to any person for any interest imposed by this section."

[7]Alternatively, Wal-Mart asked the trial court to exercise its discretion under section 998 to disallow those expert fees attributable to work performed before Wilson's May 1996 settlement offer.

[8]In the alternative, Wilson argued, if the judgment is measured for section 998 purposes against her *second* statutory offer, the judgment exceeds even the $249,000 offer, after "all costs incurred by plaintiff (pre-offer and post-offer)" are added to the judgment.

This assertion presents an issue of statutory interpretation which we · review de novo. (*Steinfeld* v. *Foote-Goldman Proctologic Medical Group, Inc.* (1997) 60 Cal.App.4th 13, 17 [70 Cal.Rptr.2d 41] [interpreting section 998 and Civil Code section 3291].) In construing section 998, we follow the fundamental rule of statutory construction " 'that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]' [Citations.] In determining such intent, the court must first look to the words of the statute." (*T. M. Cobb Co.* v. *Superior Court* (1984) 36 Cal.3d 273, 277 [204 Cal.Rptr. 143, 682 P.2d 338].)

As relevant here, former section 998, subdivision (d), provided: "If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment, the court in its discretion may require the defendant to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the plaintiff, in addition to plaintiff's costs." The plain language of section 998 is thus silent as to the effect of a subsequent statutory offer on a prior statutory offer. (See *T. M. Cobb Co.* v. *Superior Court, supra,* 36 Cal.3d at p. 279.)

In *T. M. Cobb Co.*, the Supreme Court determined that, because ". . . section 998 involves the process of settlement and compromise and[,] since this process is a contractual one, it is appropriate for contract law principles to govern the offer and acceptance process under section 998." (36 Cal.3d at p. 280; see also *Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691]; *Ward* v. *Superior Court* (1973) 35 Cal.App.3d 67, 69 [110 Cal.Rptr. 501].) The *T. M. Cobb Co.* decision was careful to emphasize, however, that general contract principles should be invoked in applying section 998 "only where such principles neither conflict with the statute nor defeat its purpose," which purpose is the encouragement of pretrial settlements. (36 Cal.3d at p. 280.) After concluding the statutory policy would be promoted thereby, the court in *T. M. Cobb Co.* held that the general contract principle that offers are revocable should operate to permit an offeror to revoke a section 998 offer within the 30-day statutory period, if not yet accepted by the other party. (36 Cal.3d at pp. 281-283.)

In the course of its analysis, the court in *T. M. Cobb Co.* expressly identified the question of whether a subsequent statutory offer extinguishes a prior offer as one that "can only be answered by turning to general principles of contract law" (36 Cal.3d at p. 279), and cited with approval the decision to that effect in *Distefano* v. *Hall, supra,* 263 Cal.App.2d 380 which, under

a predecessor to section 998, held that any new offer communicated prior to a valid acceptance of a previous offer extinguished and replaced the prior one. (36 Cal.3d at p. 279; *Distefano v. Hall, supra,* 263 Cal.App.2d at p. 385.)

In *Distefano*, the defendants made their first statutory offer of compromise (in the amount of $20,000) before the first trial; they made a second statutory offer of compromise (in the amount of $10,000) prior to retrial. (263 Cal.App.2d at pp. 384-385.) The judgment in plaintiff's favor on retrial was greater than defendants' second offer, but less than the defendants' first offer. (*Id.* at p. 383.) On appeal, the defendants sought to invoke the predecessor statute to section 998, arguing that ". . . when plaintiff refused to accept their first offer, they acquired a vested right to avoid paying plaintiff's costs in the event his verdict was less than" the amount of the first offer. (*Id.* at p. 384.) Opining that ". . . we cannot attribute to the Legislature an intention to give less than full effect to the parties' reappraisal of the merits of their respective positions where a case has been tried, appealed and reversed for retrial[,]" the court in *Distefano* applied to the statutory offers of compromise the general contract principle that any new offer made prior to a valid acceptance of the prior offer, extinguished the prior one. (*Id.* at p. 385.) It held that "[u]nder such circumstances, an offer of compromise made before the second trial pursuant to section 997 should clearly supersede that made before the first trial. To deny the parties this flexibility would actually discourage settlements and defeat the very purpose of the act." (*Ibid.*) This reasoning was approved by the Supreme Court in *T. M. Cobb Co.* (36 Cal.3d at p. 279.)

We find the reasoning of *Distefano* persuasive and applicable to the instant action. *Distefano* recognizes that which Wilson overlooks; there is an evolutionary aspect to lawsuits and the law, in fairness, must allow the parties the opportunity to review their respective positions as the lawsuit matures. The litigants should be given a chance to learn the facts that underlie the dispute and consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial.

Wilson's argument overlooks a second point. Although settlements achieved earlier rather than later are beneficial to the parties and thus to be encouraged, our public policy in favor of settlement primarily is intended to reduce the burden on the limited resources of the trial courts. The trial of a lawsuit that should have been resolved through compromise and settlement uses court resources that should be reserved for the resolution of otherwise

irreconcilable disputes. While Wilson contends that the interpretation she urges would support the public policy in favor of settlement, in some cases it might not.

The factual situation before us is a good example. A plaintiff might be encouraged to maintain a higher settlement demand on the eve of trial and refuse to settle a case that should otherwise be settled if the plaintiff finds comfort in the knowledge that, even if the plaintiff receives an award less than his or her last demand, the plaintiff might still enjoy the cost reimbursement benefits of section 998 so long as the award exceeded a lower demand made by the plaintiff sometime during the course of the litigation. The reverse might be true of the defendant. "Rolling the dice" then becomes somewhat less risky and we note that lawsuits are not often settled by *reducing* the risk of trial.

Furthermore, there is some dissembling in Wilson's argument that we are reluctant to endorse. On the eve of trial she was unwilling to save the parties and the trial court the cost of trial for anything less than $249,000, yet she now asks to be reimbursed "998" costs as if she would have been willing to do so for $150,000. While we do not suggest impropriety, such fictions tend to undermine respect for our system of justice.

In addition to the above considerations, the legislative purpose of section 998 is generally better served by a bright line rule in which the parties know that any judgment will be measured against a single valid statutory offer—i.e., the statutory offer most recently rejected—regardless of offers made earlier in the litigation. (See *Poster* v. *Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 272 [276 Cal.Rptr. 321, 801 P.2d 1072] [favoring "bright line" rule in interpreting section 998].) Wilson's argument that the proper measure should be her first offer could logically be extended to a rule that a party is entitled to section 998 costs if it does better at trial than it would have under *any* offer made at *anytime* before judgment. While a rule such as that arguably might promote settlement in some cases, its potential for mischief, or at least confusion, is apparent.

The authorities upon which Wilson relies are inapposite. In *Gallagher* v. *Heritage* (1983) 144 Cal.App.3d 546 [192 Cal.Rptr. 614], the court held that "[o]nce a statutory offer is made and the time for acceptance [has] expired, the offeror is cloaked with the protections provided in [section 998]" (*id.* at

p. 550), and the statutory offer is not superseded by a subsequent oral offer.[9] (*Id.* at pp. 547-548.) However, the court in *Gallagher* based its conclusion on the view that "when an acceptance has not been effected [pursuant to section 998], contract law has no applicability" (*id.* at p. 550), which conclusion was expressly disapproved by the Supreme Court in *T. M. Cobb Co.* (36 Cal.3d at p. 280, fn. 8.)

Wilson's reliance on *Wickware v. Tanner* (1997) 53 Cal.App.4th 570 [61 Cal.Rptr.2d 790], is similarly misplaced. In *Wickware,* the court held invalid a second statutory offer by the plaintiff because it was conditioned upon acceptance by all defendants. (*Id.* at pp. 576-577.) Absent a valid second offer, the court compared the plaintiff's first statutory offer to the judgment to determine that the judgment was more favorable to the defendants. (*Id.* at p. 577.) In the instant case, there is no assertion that Wilson's second offer is procedurally infirm.

Having properly concluded that Wilson's second statutory offer extinguished the first, the trial court was permitted to exercise its discretion to require Wal-Mart "to pay a reasonable sum to cover costs of the services of expert witnesses" only if, after rejecting Wilson's offer of $249,000, Wal-Mart thereafter "fail[ed] to obtain a more favorable judgment." (§ 998, subd. (d).) In making this determination, the court must look to the net judgment, including all costs incurred by the plaintiff. "To determine under section 998, subdivision (d) whether a defendant fails to obtain a more favorable judgment than a section 998, subdivision (d) offer to compromise which includes a waiver of costs, the amount of the judgment is deemed to be the amount of the damages plus the amount of costs allowed under section 1033.5, subdivision (a)." (*Wickware v. Tanner, supra,* 53 Cal.App.4th at p. 575; *Stallman v. Bell* (1991) 235 Cal.App.3d 740, 748-749 [286 Cal.Rptr. 755].) The trial court determined that plaintiff's costs (including statutory costs, but excluding any prejudgment interest) were $18,977.22.[10] Even after that amount is added to the verdict, Wal-Mart obtained a "more favorable" judgment than it would have had it accepted Wilson's settlement offer of $249,000. Consequently, Wilson was not entitled to recover expert fees under section 998, subdivision (d).

Wilson contends the trial court erred in refusing to award her prejudgment interest under Civil Code section 3291. Civil Code section

---

[9] In dicta, the court in *Gallagher* opined that "[a] second section 998 offer compels no different conclusion. If unaccepted it would clothe the offeror with the benefits and expose the offeree to the burdens, triggered by a different verdict amount." (*Gallagher v. Heritage, supra,* 144 Cal.App.3d at p. 550.)

[10] Wilson mistakenly states in her reply brief that the total costs allowed were $10,619.49. In fact, that amount represents costs allowed by the court for "Models, blowups & exhibits."

3291 provides in pertinent part that, if, in a tort action, "the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and *the plaintiff* obtains a more favorable judgment," (italics added) the plaintiff may recover prejudgment interest computed as set forth in that statute.[11] ■ Because Wilson failed to satisfy the prerequisite to the application of section 3291—in that she did not obtain a more favorable judgment than her compromise offer of $249,000—she is not entitled to recover prejudgment interest.[12] ■ "The plain language of section 3291 provides for a simple comparison in personal injury cases between the judgment and the offer to compromise; if the judgment is 'more favorable,' the plaintiff is eligible for prejudgment interest on the damages attributable to personal injury." (*Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 662-663, fn. 13 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

■ Wilson argues not only that she is entitled to prejudgment interest, but asserts that because prejudgment interest is a "cost," she is entitled to have the amount of prejudgment interest added to the judgment *before* a determination of whether her judgment is more favorable than the $249,000 section 998 offer.[13] Even were Wilson correct that prejudgment interest under section 3291 is properly characterized as a "cost" rather than an element of damages (compare *Bodell Construction Co.* v. *Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1525, fn. 14 [73 Cal.Rptr.2d 450], with *Steinfeld* v. *Foote-Goldman Proctologic Medical Group, Inc., supra,* 60 Cal.App.4th at p. 18), she cannot bootstrap her way to an entitlement to the benefits of section 998 and Civil Code section 3291—each of

[11]"To be entitled to prejudgment interest, *plaintiff* must receive a 'more favorable judgment' than her offer to compromise (Civ. Code, § 3291). . . . However, a plaintiff may recover expert witness fees in the discretion of the court if defendant refuses to accept plaintiff's offer to compromise and thereafter '*defendant* fails to obtain a more favorable judgment.' (§ 998, subd. (d).) The subtle distinction between Civil Code section 3291 and section 998, subdivision (d) becomes important only in the relatively infrequent situation where the offer and judgment are equal. In that case, as with a 'push' in the game of blackjack, the status quo ante prevails." (*Wagy* v. *Brown* (1994) 24 Cal.App.4th 1, 10, fn. 5 [29 Cal.Rptr.2d 48], italics added.)

[12]By separate motion, Wilson asks that we take judicial notice of various matters she contends reflects legislative intent regarding that portion of Civil Code section 3291 which pertains to how prejudgment interest should be computed. Given our conclusion that Wilson failed to satisfy the statute's first requirement that she have obtained a judgment more favorable than her section 998 offer, we do not examine whether the trial court correctly interpreted other portions of Civil Code section 3291. Accordingly, we deny Wilson's request for judicial notice because the documents do nothing to aid in our analysis of the matters raised by this complaint. (Evid. Code, §§ 452, subd. (d), and 459, subd. (a).)

[13]According to Wilson's calculations, if expert fees and prejudgment interest in the amounts claimed "had properly been added to the judgment of $175,000, the total would have been $249,263.96," which sum exceeds her $249,000 section 998 offer.

which is contingent upon obtaining a judgment in excess of the $249,000 settlement offer—by adding those benefits to the judgment *before* the judgment is measured against the section 998 offer.[14] The "simple comparison in personal injury cases between the judgment and the offer to compromise" required by section 3291 as a condition of awarding prejudgment interest (*Lakin* v. *Watkins Associated Industries, supra,* 6 Cal.4th at p. 662, fn. 13) cannot logically be performed after prejudgment interest has become a component of the judgment.

## DISPOSITION

The judgment is affirmed. Plaintiff Wilson shall recover costs as the prevailing party in No. C027518. Defendant Wal-Mart shall recover costs as the prevailing party in No. C027765.

Scotland, P. J., and Morrison, J., concurred.

A petition for a rehearing was denied May 20, 1999, and the petition of appellant Robin Wilson for review by the Supreme Court was denied August 18, 1999. Mosk, J., Kennard, J., and Brown, J., were of the opinion that the petition should be granted.

---

[14]As one court has explained, the legislative history of Civil Code section 3291 corroborates this conclusion, inasmuch it shows that, notwithstanding Assembly Judiciary Committee comments that "insufficient attention had been paid to whether prejudgment interest should be included in the judgment for the purposes of determining if the judgment was more favorable than the Code of Civil Procedure section 998 offer," an amendment which would have expressly *included* prejudgment interest as part of the judgment was rejected. (*Steinfeld* v. *Foote-Goldman Proctologic Medical Group, Inc., supra,* 60 Cal.App.4th at pp. 18-19.)