[No. C053428. Third Dist. Aug. 28, 2008.]

ANTONIO BARBA, Plaintiff and Respondent, v.
LUPE PEREZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., III., IV.A., and IV.B. of the Discussion. Publication shall include the Procedural Background of part IV. and part IV.C. of the Discussion.

### COUNSEL

Cavazos Law Firm and Hector A. Cavazos, Jr., for Defendant and Appellant.

Aaron O. Anguiano for Plaintiff and Respondent.

### OPINION

**BUTZ, J.**—Following a special verdict by the jury, the trial court entered judgment in favor of plaintiff and respondent Antonio Barba for $117,053.42 against defendant and appellant Lupe Perez. Following judgment, Perez moved to tax certain costs Barba had claimed under Code of Civil Procedure section 998.[1] Perez's motion was denied in part and granted in part.

Perez appeals from the judgment and the order denying his motion to tax costs, contending that (1) the jury's verdict is not supported by substantial evidence; (2) the trial court erred in denying his motion for nonsuit based on an agency theory of liability; (3) the trial court erred in rejecting his proposed special jury instruction; and (4) the trial court erred in allowing Barba to recover section 998 costs against him. We shall affirm the judgment and order denying the motion to tax costs.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

## FACTUAL BACKGROUND

Viewing the evidence most favorable to respondent (Barba), as we must (*In re Paul C.* (1990) 221 Cal.App.3d 43, 52 [270 Cal.Rptr. 369]), the record discloses the following facts.

On May 18, 2004, Perez was the owner of the Tropical Club in Lodi, which included a rental housing unit above the club. At the time of the events at issue, Perez was 82 years old, blind, and confined to a wheelchair. Because of his infirmities, his wife Leticia Perez (Leticia)[2] was managing Perez's businesses for him, as she had been since May 2003. As part of her managerial duties, Leticia collected rent for the housing unit, hired staff and musicians for the club, paid the employees, and coordinated with vendors for the club's supplies.

On May 18, 2004, Barba and his wife visited Leticia at the apartment above the Tropical Club. Juan Mendoza, a musician at the club and occasional aide to Perez, was also there, preparing to move into the apartment with his wife. Earlier that day, Leticia had asked Mendoza to move an old refrigerator out of the apartment to make room for the new one. When Barba and his wife arrived at the apartment to visit, she asked Barba to help Mendoza move the refrigerator.

The record contains conflicting testimony of the incident; however, it appears that Barba and Mendoza put the refrigerator on a dolly and together began moving it down the stairwell, with Mendoza holding the dolly handles at the top of the stairs and Barba holding the refrigerator from the bottom. After moving the refrigerator a short distance, Mendoza suddenly let go of the dolly handles and the refrigerator fell towards Barba. Barba attempted to hold up the refrigerator by himself but it was too heavy. Barba tried to move out of the way as the refrigerator fell, but it landed on his left foot.

Barba was taken to Lodi Memorial Hospital, and then transferred to UC Davis Medical Center, where he underwent surgery for a broken ankle. As a result of the injuries, Barba incurred more than $70,000 in medical expenses and lost time from work.

## PROCEDURAL HISTORY

On January 11, 2005, Barba filed a complaint against Perez, alleging Perez was vicariously liable for his injuries due to the negligence of "[his]

---

[2] To avoid confusion between Lupe Perez and his wife Leticia, we will refer to Leticia Perez by her first name. No disrespect is intended.

employee and/or agent[, Juan Mendoza]." On January 20, 2005, Barba served Perez with a summons and complaint, along with an offer to settle the case for $99,999.99 pursuant to section 998.

The case was tried to a jury. The jury answered questions posed on a special verdict form, as follows:

"1. Was JUAN MENDOZA negligent?

"[**ANSWER: Yes.**] . . .

"2. Was JUAN MENDOZA'S negligence a substantial factor in causing harm to ANTONIO BARBA?

"[**ANSWER: Yes.**] . . .

"3. Was JUAN MENDOZA the agent of LETICIA PEREZ or LUPE PEREZ?

"[**ANSWER: Yes.**] . . .

"4. Was JUAN MENDOZA requested to move the refrigerator by LETICIA PEREZ?

"[**ANSWER: Yes.**] . . .

"5. Was LETICIA PEREZ authorized to ask JUAN MENDOZA for assistance in moving the refrigerator?

"[**ANSWER: Yes.**] . . .

"6. Was ANTONIO BARBA negligent?

"[**ANSWER: No.**] . . . [¶] . . . [¶]

"8. What are ANTONIO BARBA'S damages?

| | |
|---|---|
| "a. Medical expenses: | **$75,053.42** |
| "b. Loss of Income: | **42,000.00** |
| "c. Non-economic loss, including physical [p]ain/mental suffering: | **0.00** |
| "Total: | **$117,053.42** |

"9. What percentage of responsibility for ANTONIO BARBA'S harm do you assign to:

"ANTONIO BARBA:          [0]%

"LUPE PEREZ:          **100%**."         (Boldface added.)

Based on these answers, the trial court entered judgment in favor of Barba against Perez for $117,053.42.

## DISCUSSION

### I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. Section 998 Costs

*Procedural background**

Along with the summons and complaint, Barba served Perez with an offer to settle the case pursuant to section 998 for $99,999.99.[3] Perez did not respond to the offer and filed an answer to the complaint almost four weeks later.

Following entry of judgment in the amount of $117,053.42, Barba filed a memorandum of costs, including prejudgment interest and expert witness fees, pursuant to section 998. Perez filed a motion to tax costs, contending that such fees and costs were not recoverable. The trial court denied this aspect of the motion.[4]

### A.–B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 444.

[3] Section 998 establishes a procedure to shift costs if a party fails to accept a reasonable settlement offer presented not less than 10 days before trial. It provides that if a defendant fails to accept a written offer to compromise by a plaintiff and fails to obtain a more favorable judgment, the defendant must pay the plaintiff's costs incurred after the offer, and may be ordered to pay the expert witness fees. (§ 998, subds. (b), (d).)

[4] The trial court granted the motion to tax costs with regard to a filing fee that had been reimbursed previously and a service of process fee because the court determined the method of service was neither reasonable nor necessary.

## C. *Reasonableness of Section 998 Offer*

Perez contends that "[e]ven assuming, arguendo, that service of the [section] 998 [offer] was effected while the trial court had jurisdiction," "[i]t is unreasonable to expect that [he], when first faced with the service of summons and a complaint, would have a reasonable basis to believe an offer to compromise was fair." Perez therefore argues the trial court abused its discretion in denying his motion because at the time Barba served him with the section 998 offer, he "had absolutely no basis to determine if the offer was reasonable."

Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion. (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 135–136 [84 Cal.Rptr.2d 753]; cf. *Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 502 [213 Cal.Rptr. 256, 698 P.2d 159].)

■ One factor to be considered by the trial court as to the reasonableness of a section 998 offer is the amount offered as compared to the judgment ultimately recovered. (*Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692, 699–700 [241 Cal.Rptr. 108] (*Elrod*).) Where the offeror obtains a judgment more favorable than its offer, the judgment constitutes prima facie evidence showing the offer was reasonable. (*Id.* at p. 700.) Perez points to nothing in the record rebutting this presumption. Indeed, the offer came remarkably close to the amount of damages ultimately awarded by the jury.

■ Perez uses language in *Elrod* stating that "[i]f the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer" (*Elrod, supra*, 195 Cal.App.3d at p. 699) to argue that he did not have "a reasonable basis to believe [the offer] was fair."

Perez's reliance on *Elrod* is misplaced. In *Elrod*, we upheld the trial court's determination that a *defendant's* low-ball settlement offer to a plaintiff was not reasonable, where the defendant possessed crucial information limiting its exposure that was unknown to the plaintiff. (*Elrod, supra*, 195 Cal.App.3d at pp. 700–702.)

■ Here, Barba was not playing "hide the ball." The parties had a close, semifamilial relationship, and there was free flow of information between them. Barba waited eight months after the accident before filing the lawsuit. He wrote a letter before the suit was filed, informing defendant's agent that his medical bills were about $70,000 and requesting that they be paid. The

letter fell on deaf ears. Finally, Barba's section 998 offer was served along with a complaint listing medical expenses in excess of $70,000 and seeking damages for lost wages.

The purpose of section 998 is to encourage pretrial settlements and avoid needless litigation. (*T. M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 [204 Cal.Rptr. 143, 682 P.2d 338]; *Fassberg Construction Co. v. Housing Authority of Los Angeles* (2007) 152 Cal.App.4th 720, 764 [60 Cal.Rptr.3d 375].) "[T]he trial judge who heard all of the evidence and presumably was in the best position to evaluate [Barba's] offer . . . concluded that it was reasonable." (*Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 117 [30 Cal.Rptr.2d 486].) We cannot conclude, under the present facts, that the trial court abused its discretion in awarding Barba his fees and costs pursuant to section 998.

Our dissenting colleague advocates a far-reaching extension of *Elrod,* concluding that, absent the almost unheard-of fact scenario that he poses, any section 998 offer served by a plaintiff before the answer is due is per se unreasonable, ostensibly because the defendant has not had an adequate opportunity to conduct discovery on the issue of damages. We disagree.

■ Because the Legislature has made an award of costs under section 998 discretionary, appellate decisions have held that trial courts may properly consider whether the subject offer was made in good faith and was reasonable under the existing circumstances. (*Burch v. Children's Hospital of Orange County Thrift Stores, Inc.* (2003) 109 Cal.App.4th 537, 548 [135 Cal.Rptr.2d 404]; *Elrod, supra,* 195 Cal.App.3d at pp. 699–700; *Wear v. Calderon* (1981) 121 Cal.App.3d 818, 821 [175 Cal.Rptr. 566]; *Pineda v. Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 63 [169 Cal.Rptr. 66].) Even assuming a situation (unlike the one presented here) where a defendant has no information about the plaintiff's damages when served with an early section 998 offer, defense counsel may request that plaintiff provide informal discovery on the damage issue and/or allow an extension of time to respond to the demand. If plaintiff's counsel refused to accord the defendant these courtesies and unyieldingly insisted that defendant respond without information, such conduct could then be presented to the trial court when it considered whether to award special fees and costs. Undoubtedly, such obstinacy would be viewed as potent evidence that plaintiff's offer was neither reasonable nor made in good faith.

This is exactly the way section 998 was designed to operate: to encourage the parties to consider the option of settlement seriously, before significant fees are incurred and they become entrenched in their positions.

■ Section 998, subdivision (b) allows an offer of compromise to be served until 10 days prior to commencement of trial. Thus, while it purposely set a deadline beyond which the offer may not be served, the Legislature did not impose any *minimum* period that must elapse following commencement of suit for service of a valid section 998 offer. We respect the Legislature's choice in this area and refuse to impose a judicial "waiting period" for serving an offer to compromise.

## DISPOSITION

The judgment and order denying the motion to tax costs are each affirmed. Plaintiff is awarded his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Robie, J., concurred.

**SIMS, Acting P. J.,** Concurring and Dissenting.—I concur in parts I., II. and III. of the majority opinion.

I respectfully dissent from part IV., which affirms the trial court's award of prejudgment interest and expert witness fees under Code of Civil Procedure section 998. (Undesignated statutory references are to the Code of Civil Procedure.) In my view, plaintiff's section 998 offer (998 offer), which was served at the same time as the summons and complaint, was invalid. The majority's contrary conclusion unfortunately adds another wicked slider to a plaintiff's arsenal of hardball litigation tactics: serving a 998 offer with the summons and complaint.

In *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692 [241 Cal.Rptr. 108] (*Elrod*), this court stated: "[T]he section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one. If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer." (*Id.* at p. 699.)

In *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382 [85 Cal.Rptr.2d 4], this court recognized the importance of insuring that a party served with a 998 offer be given a reasonable opportunity to evaluate the offer. In *Wilson*, the plaintiff served a 998 offer, in the amount of $150,000, early in the litigation. (*Id.* at p. 387.) The offer was not accepted and was deemed rejected. (*Ibid.*) Closer to trial the plaintiff served a second 998 offer in the amount of $249,000, which was also deemed rejected. (*Ibid.*) The jury's verdict was for $175,000. (*Ibid.*)

The question before this court was whether the first 998 offer, for $150,000, remained valid. Applying traditional contract principles, we concluded the second 998 offer served to revoke the first offer. (*Wilson v.*

*Wal-Mart Stores, Inc., supra*, 72 Cal.App.4th at p. 390.) But we also reasoned that allowing the first 998 offer to remain valid would not further the purpose of section 998, which is to encourage settlements. We said, "[T]here is an evolutionary aspect to lawsuits and the law, in fairness, must allow the parties the opportunity to review their respective positions as the lawsuit matures. *The litigants should be given a chance to learn the facts that underlie the dispute and consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial.*" (*Wilson v. Wal-Mart Stores, Inc., supra*, 72 Cal.App.4th at p. 390, italics added.)

I do not think defendant in this case was given a reasonable opportunity to evaluate plaintiff's 998 offer, which was served with the summons and complaint.

I think a defendant should be entitled to complete minimal discovery before being expected to evaluate and respond to a 998 offer. In the present case, for example, I should think that a defendant should be entitled, at a minimum, to take the plaintiff's deposition and to use formal discovery procedures to discover his medical specials from medical providers.

Yet, in this case, defendant was required to respond to plaintiff's 998 offer within 30 days of service of summons and complaint—the same period of time in which defendant was obligated to answer the complaint. Thus, section 998, subdivision (b)(2), provides, "If the offer is not accepted prior to trial or arbitration or *within 30 days after it is made, whichever occurs first*, it shall be deemed withdrawn, and cannot be given in evidence upon the trial or arbitration." (Italics added.) Thus, plaintiff's 998 offer had to be accepted within 30 days of its service (at the same time as the summons and complaint) or else it was deemed withdrawn and could not thereafter have been accepted. (The period to respond to a complaint is 30 days; see § 412.20, subd. (a)(3).)

While it is technically true that a defendant can notice the deposition of the plaintiff as soon as the defendant is served with the summons and complaint (§ 2025.210, subd. (a)), I do not think it is a good idea to force defendants to jam basic discovery into the 30 days following service of the summons and complaint in order to respond to a 998 offer. As a practical matter, here is what typically has to happen within 30 days following service of a personal injury complaint upon a defendant: (1) The defendant has to deliver the summons and complaint to his insurance carrier; (2) A claims adjuster for the insurer has to review the allegations of the complaint with the insured; (3) The claims adjuster has to line up counsel for the defendant; (4) Defense counsel has to discuss the allegations of the complaint with the insured and prepare an answer.

Imagine, if you will, the litigation frenzy that will be produced if defense counsel must also take the plaintiff's deposition and obtain medical specials during this 30-day period. Not to mention the retention of experts and obtaining opinions from them.

Why on earth do we want to do this?

The majority proffer arguments why plaintiff's 998 offer was reasonable and valid in this case.

Thus, the majority assert "the parties had a close, semifamilial relationship, and there was free flow of information between them." (Maj. opn., *ante*, at p. 450.) However, the "free flow" of information from plaintiff as to his damages was contained in a letter from plaintiff to defendant, which is not a part of the record. With respect, I do not think a defendant should be obligated to evaluate a $99,000 offer based on damages information supplied informally (not under oath) by a plaintiff or his attorney. Although plaintiffs' attorneys are officers of the court, on rare occasions such attorneys have been known to inflate their client's damages in demand letters written prior to discovery. In my view, a 998 offer approaching $100,000 can be reasonably evaluated only after basic discovery procedures (requiring responses under oath) have been used.

The majority also argue that "defense counsel may request that plaintiff provide informal discovery on the damage issue and/or allow an extension of time to respond to the demand." (Maj. opn., *ante*, at p. 451.) As I have already explained, informal discovery is unsatisfactory. And section 998 provides no mechanism to obtain a court order extending the time to respond to a 998 offer. Defense counsel should not be at the mercy of plaintiff's counsel's charitable mood.

I can envision at least one scenario in which such service of a 998 offer would be reasonable. Imagine a scenario in which plaintiff files a lawsuit for personal injury; defendant answers; and discovery is conducted. But, on the eve of trial, plaintiff's counsel, who is unprepared for trial, dismisses the lawsuit without prejudice. When plaintiff refiles that lawsuit, in my view, either plaintiff or defendant would act reasonably in serving a 998 offer as soon as defendant is served with the summons and complaint. The key is that the party receiving a 998 offer has had the opportunity for basic discovery.

In the instant case, I would conclude, following *Elrod, supra*, 195 Cal.App.3d 692 and *Wilson v. Wal-Mart Stores, Inc., supra*, 72 Cal.App.4th 382, that defendant did not have a reasonable opportunity to learn the facts and circumstances of plaintiff's claim and, therefore, the 998 offer was invalid.

I would modify the judgment by excising the section 998 costs awarded to plaintiff and otherwise affirm the judgment as modified.