Filed 6/17/14  Harmon v. Safeway CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WILLIAM HARMON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>SAFEWAY, INC.,<br><br>        Defendant and Respondent. | A134891<br><br>(Sonoma County<br>Super. Ct. No. SCV-248465) |

## INTRODUCTION

Plaintiff William Harmon appeals from a judgment of the Sonoma County Superior Court following a jury trial awarding him $5,060 damages in his personal injury action against defendant Safeway, Inc. (Safeway) after he was hit by a runaway grocery cart.  Harmon contends:  (1)  The trial court abused its discretion in granting Safeway leave to change its admissions admitting that the cart hit his wrist; (2) after allowing defendant to withdraw its admissions, the court further erred in denying his motion for cost of proof sanctions; (3) the court erred in denying his motion for additur or for a new trial as to damages only, on the grounds that the damages awarded were inadequate, the verdicts were "against law" and were inconsistent (Code Civ. Proc., § 657),[1] and the jury refused to follow the court's instructions on causation; and (4) the court abused its discretion in denying his motion for judgment notwithstanding the verdict (JNOV) after denying his additur and new trial  motions.  Finally, Harmon contends the court erred in

_____

[1]  Unless otherwise indicated, all statutory references are to the Code of Civil Procedure and all references to rules are to the California Rules of Court.

1

granting Safeway's section 998 motion for costs, which resulted in a net award to Safeway of $35,092.50. We shall affirm the judgment.

## APPEALABILITY OF UNDESIGNATED ISSUES

At the outset, we confront Safeway's claim that pursuant to rule 8.130(a)(2),[2] Harmon has waived his right to raise the issues identified above by his failure to designate them in his *notice of appeal*. As Harmon points out, Safeway does not quote from the notice of appeal, which designates the appeal as being from a "judgment after jury trial," but from Harmon's *notice designating the record on appeal* filed May 11, 2012, in which he specifically designated less than all of the reporter's transcript. That record designation stated the points he intended to raise on appeal as: "1. Fact that Plaintiff received an injury from having a shopping cart pushed into his arm by a negligent Safeway clerk. [¶] 2. That plaintiff suffered an injury in said accident requiring surgery. [¶] 3. That it was the subject accident that caused plaintiff to undergo surgery, and not any pre-existing condition. [¶] 4. Plaintiff benefited from said surgery."

As pointed out by a leading appellate treatise, "Designating less than all the testimony limits the scope of appellate review to the *points stated* in the designation notice, unless otherwise permitted by the court of appeal on appellant's motion. [Citations.]" (Eisenberg et al., Civil Appeals and Writs (The Rutter Group, 2013) ¶ 4:80.1, p. 4-20, citing rule 8.130(a)(2) and *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 497 ["The purposes of a notice filed pursuant to [the rule] are to inform the court reporter which portions of the oral proceedings to transcribe, *to limit the scope of appellate review to the issues specified,* and to enable the respondent on appeal to

---

[2] Rule 8.130(a), provides in relevant part:
"(a) Notice
    "(1) A notice under rule 8.121 designating a reporter's transcript must specify the date of each proceeding to be included in the transcript and may specify portions of designated proceedings that are not to be included. . . .
    "(2) *If the appellant designates less than all the testimony, the notice must state the points to be raised on appeal; the appeal is then limited to those points unless, on motion, the reviewing court permits otherwise.*" (Italics added.)

2

determine whether to request that additional portions of the oral proceedings be transcribed."] (Italics added).)

Moreover, after designating an incomplete transcript, Harmon did not seek this court's permission to augment the record or raise appellate issues not identified in his record designation. Thus, Harmon waived any contention of error on appeal. (Rule 8.130(a)(2); see also *McDaniel v. Dowell* (1962) 210 Cal.App.2d 26, 30 [where appellant proceeded by partial transcript, appellate court would not consider contention that was not listed as one of the points to be raised on appeal]; *Wickham v. Southland Corp.* (1985) 168 Cal.App.3d 49, 52, fn. 2 [where appellant designates only a partial record, issues not embraced within the points stated are not subject to review absent a successful motion to proceed on other points].) Nevertheless, in the exercise of our discretion, we will reach the merits of Harmon's claims to the extent permitted by the partial record before us and the proper scope of review under which we operate when the record omits portions of the transcript.

On a partial record containing less than all oral proceedings, there is a general presumption that the abbreviated record "includes all matters material to deciding the issues raised." (Rule 8.163;[3] *Hillman v. Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 864; *County of Yolo v. Francis* (1986) 179 Cal.App.3d 647, 650, fn. 2; Eisenberg et al., Civil Appeals and Writs, *supra,* ¶ 4:51, p. 4-13.) In other words, we will not presume that the absence of error would have been shown by something that is not in the record. "This rule makes it possible to take an appeal on a partial record without risking defeat by a presumption that omitted proceedings would have shown the absence of error." (Eisenberg et al., Civil Appeals and Writs, [¶] 4:51, p 4-13; but see, *Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955 [refusing to find error on a silent record and

---

[3] "The reviewing court will presume that the record in an appeal includes all matters material to deciding the issues raised. If the appeal proceeds without a reporter's transcript, this presumption applies only if the claimed error appears on the face of the record." (Rule 8.163.)

therefore inferring substantial evidence in favor of the trial court's conclusions]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447.)

In determining whether substantial evidence supported the jury verdict and the court's resolution of the posttrial motions, we must review the entire record before us; we cannot limit our review to isolated pieces of the evidence. (See *In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 50.) An adequate record is critical to our substantial evidence review. We presume the judgment is correct, and a party challenging a judgment must provide an adequate record to permit us to determine whether the jury verdict is supported by substantial evidence and whether the trial court abused its discretion in denying motion for additur, new trial, or judgment notwithstanding the verdict.

## FACTS AND PROCEDURAL BACKGROUND

Harmon sued Safeway, alleging that on May 17, 2009, while shopping at Safeway, he suffered a fracture of his right wrist and other damages when a train of shopping carts being pushed by a Safeway employee broke free from the employee and struck his wrist. Safeway answered, generally denying all allegations and specifically denying Harmon was injured as a result of any act or omission on its part.

Before taking Harmon's deposition, Safeway responded to his Request for Admissions – Set One, by admitting at least one shopping cart being pushed by its employee Anthony Jones, struck Harmon's right wrist and that the wrist was injured as a result.[4] At that point, Safeway had only information that Harmon claimed his right wrist had been struck and a handwritten statement by Safeway employee Anthony Jones that he saw a cart strike Harmon's arm.

---

[4] Specifically, in response to Harmon's request for admission 4, Safeway admitted: "The shopping carts pushed by Mr. JONES accidentally struck plaintiff's right wrist." In response to request for admission 5, Safeway admitted that plaintiff's right wrist was injured in the subject accident.

4

In his later deposition of May 18, 2011,[5] Harmon testified that he had both hands on the handle of the cart the entire time, up until the time he claims the cart struck his arm.

In July, Safeway served a section 998 "Offer to Compromise" for $100,000. Harmon did not accept the offer.

In August, Safeway conducted an independent medical examination of Harmon and was informed by its expert, board certified Orthopedic Surgeon Charles Stuart, M.D., that in his opinion it would have been physically impossible for Harmon's arm to have been struck if the accident had occurred in the manner claimed by Harmon in his deposition—that is, with both hands holding on to the handle of the cart the entire time. Safeway retained Engineer Richard Stuart and Biomechanics Expert Laura Liptai to reconstruct the accident and determine whether plaintiff could have been injured in the manner to which he testified at his deposition. Both opined it was a physical impossibility. Harmon's counsel took depositions of Dr. Stuart and Liptai in September. Harmon's expert, Biomechanical Engineer Albert Ferrari testified at his deposition that it was "possible" Harmon's arm could have been struck if the front end of the cart raised up off the ground on impact.

On October 20, upon Harmon's motion in limine to preclude Safeway from attempting to prove Harmon was not struck on the wrist, Safeway moved to withdraw its admissions that Harmon's right wrist was injured when struck by a shopping cart. Safeway's counsel declared under oath that due to counsel's mistake, inadvertence and excusable neglect, counsel had not previously moved to withdraw Safeway's responses to request for admissions Nos. 4 and 5. Counsel argued there was no prejudice to Harmon, who had been aware of Safeway's position and defense for months and had retained its own expert to explain how the injury could have occurred despite a height discrepancy between the handle and the basket of the carts. All witnesses had been disclosed and

---

[5] All dates are in 2011, unless otherwise stated.

deposed. The court granted Safeway's motion to withdraw the admissions on October 24.

Jurors were summoned to the courtroom on October 25 and counsel presented opening statements on October 26.

It was undisputed at trial that Harmon had severe, degenerative arthritis in the joint at the base of the thumb that preexisted the cart incident. Evidence was presented that was consistent with Harmon's theory that although pre-existing degenerative arthritis, such as Harmon's, was not caused by the cart incident and can gradually worsen and extend on its own, the collision with the cart caused a shearing, or torking of the thumb, which would have resulted in the severe pre-existing degenerative arthritis becoming symptomatic. Eventually, Harmon had surgery for this condition, performed by board certified Orthopedic Surgeon Vatche Cabayan, M.D. The surgery was successful and Harmon was released to work without limitations in 2010.

Contrary to Harmon's theory and evidence, Safeway presented evidence that Harmon would have needed surgery on the thumb at some point in his life to remedy his preexisting severe arthritis and that even if he had been hit by the carts, he suffered only a bruise on his arm as a result and that the cart collision did not trigger a flare up or cause worsening of the preexisting arthritis condition. Such evidence included the following: Jones, the Safeway employee, saw no redness or bruising on Harmon's arm where the cart struck it. Harmon sought treatment two days later at Sutter Medical Center Emergency Department. The emergency room (E.R.) physician diagnosed a 1 to 1and 1/2 inch area of redness on the inside of Harmon's forearm. Harmon had full range of motion in his fingers, wrist and elbow and there was no record of any swelling, although there was some tenderness to palpation. Five days after the accident, when Harmon saw his treating physician, that physician noted a bruise on the outside of the forearm with minimal swelling in the area of the bruise. Harmon returned to his physician on June 4, 2009, and the doctor diagnosed a contusion of the forearm, finding Harmon still had some bruising, swelling and tenderness around the bruise and that his range of motion was much improved, although not full. Neither the records of the E.R. nor Harmon's

6

own physician noted any complaint by Harmon about symptoms regarding his thumb. The MRI showed no evidence of any acute or traumatic injury. On June 16, 2009, nearly a month after the accident, Harmon saw a physical therapist. On the new patient information form, Harmon marked a single X on the inside area of his right forearm and not his thumb, wrist or hand, as the area where he was having complaints or symptoms. The first mention of symptoms related to the thumb came when Harmon visited the physical therapist the second time, 29 days after the accident.

Dr. Stuart testified he had performed an independent medical examination upon Harmon, had reviewed all of Harmon's medical records, including physical therapy records and the MRI taken at Santa Rosa Memorial Hospital, and had read depositions of Harmon and other witnesses, including Dr. Cabayan. Dr. Stuart testified to his opinion that if Harmon sustained any injury in the accident, it was a bruise on the outside of his forearm. He opined that the Safeway cart incident was not a significant factor in the need for surgery, given the lack of any positive physical findings related to the thumb in the acute postincident period.

The record before us does not contain any testimony by Harmon. However, he told Dr. Stuart that he continued to work as a self-employed carpenter and contractor after the accident. Safeway presented expert testimony from an economist who had reviewed available information to try to determine whether Harmon suffered any wage loss after the accident. He testified that Harmon's income in the six months following the incident was actually higher than during the same months the previous year. He also testified it appeared Harmon's income did decline for a few months after surgery into the early summer. If the thumb surgery were related to the Safeway cart incident, then Harmon's loss for three to four months would be approximately $10,000 to $12,000 gross income, not taking expenses of $5,000 to $6,000 into account. Upon returning to work after surgery in 2010, Harmon was back to his full time earnings and had no future economic loss.

On November 2, the jury rendered its verdict, finding Safeway was negligent and that Safeway's negligence was a substantial factor in causing harm to Harmon. The jury

7

awarded total damages of $5,060 for past economic loss, including: $1,080 for lost earnings; $830 for emergency room treatment; $1,350 for physical therapy, and $1,800 for an MRI. The jury made no award for future economic loss or past or future non-economic loss, including physical pain or mental suffering.

On November 9, pursuant to section 998, Safeway moved to recover from Harmon costs and expert witness fees it incurred after his rejection of its offer to compromise. It filed a cost memorandum showing $59,963 in such costs.

On November 23, Harmon moved for additur, or in the alternative, for a new trial as to damages only, on the ground damages were inadequate and the verdict was against law. Hearing was held on December 21, on Safeway's section 998 motion for cost of proof sanctions and on Harmon's motions for additur, or in the alternative for new trial as to damages only and his motion for costs of proof sanctions. On February 3, 2012, the court granted in part Safeway's motion in support of its memorandum of costs and to enforce its section 998 offer to compromise, awarding Safeway half its pretrial expert fees or $19,810.5, plus all other claimed costs, for a total of $40,152.50, with a jury verdict set-off in the amount of $5,060, for a total judgment of $35,092.50. The court denied Harmon's motions for additur, new trial as to damages only, and for cost of proof sanctions.

On February 3, 2012, judgment was entered in favor of Safeway and against Harmon in the amount of $35,092.50.

On February 27, Harmon moved for JNOV on the ground there was no substantial evidence to support that portion of the verdict awarding him zero for past non-economic loss, including substantial pain and suffering. That matter was heard on April 4, 2012 and denied.

This timely appeal followed.

## DISCUSSION

### I. Withdrawal of Admissions and Denial of Cost of Proof Sanctions

Harmon contends the court should not have allowed Safeway to withdraw its admission of liability and causation after trial had commenced and that, having done so, it

8

erred in denying his motion for cost of proof sanctions. We conclude the trial court acted within the scope of its discretion in granting the motion to withdraw admissions and in denying Harmon's request for cost of proof sanctions.

## A. *Withdrawal of Admissions*

Section 2033.300 provides in relevant part:

"(a) A party may withdraw or amend an admission made in response to a request for admission only on leave of court granted after notice to all parties.

"(b) The court may permit withdrawal or amendment of an admission only if it determines that the admission was the result of mistake, inadvertence, or excusable neglect, and that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits.

"(c) The court may impose conditions on the granting of the motion that are just, including, but not limited to, the following:

"(1) An order that the party who obtained the admission be permitted to pursue additional discovery related to the matter involved in the withdrawn or amended admission.

"(2) An order that the costs of any additional discovery be borne in whole or in part by the party withdrawing or amending the admission."

As described above, the admissions were made before any substantial discovery had occurred, including depositions of Harmon and experts for both sides. Those depositions disclosed substantial disagreement over whether the accident could have occurred in the manner to which Harmon testified, that is that he had both hands on the cart at the time of impact. The response to the request for admissions specifically stated that "all of the following responses are provided without prejudice to defendant's right to introduce at trial any evidence that is subsequently discovered." Safeway's counsel submitted a declaration on October 20, in support of Safeway's motion to withdraw its response to the two admissions and in opposition to Harmon's in limine motion to preclude defendant from attempting to prove that he was not hit on the wrist by a shopping cart, declaring that counsel had failed to move to withdraw the admission

9

earlier in the litigation solely due to counsel's mistake, inadvertence and excusable neglect. That motion was granted on October 24, and opening statements were made the next day.

Pursuant to section 2033.300, the court may permit amendment or withdrawal of an admission *only* if it determines that the admission was made as a result of mistake, inadvertence, or excusable neglect, and that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits. Here, both requirements were satisfied. First, we agree with the authors of California Civil Practice – Procedure (Thomson Reuters 2013) that "[a]lthough [section] 2033.300 does not provide a time frame within which a responding party must make a motion for withdrawal or amendment of an admission, [section] 2024.020, [subdivision] (a) requires that hearings on discovery motions must occur no later than 15 days before the date initially set for trial. Thus, motions for amendment or withdrawal of an admission *should be made well in advance of the 15-day time limit.* A lengthy hiatus between a party's admission and the date on which that party makes a motion for amendment or withdrawal may strengthen the requesting party's prejudice argument." (Lambden et al., Cal. Civil Practice – Procedure, *supra,* at § 13:178, italics added.) Nevertheless, "should" does not equate to "must" and the court may grant the request to withdraw when it appears clear that no prejudice to the other party will result from allowing the withdrawal. Moreover, "[t]o establish prejudice, requesting parties must do more than assert that, without benefit of the admission, they will have to convince the fact finder of a matter previously conceded. They must prove that they are less able to assemble the evidence needed to establish the matter involved in the admission than they were when the admission was made. [Citation.]" (*Ibid.,* citing Modern California Discovery (4th ed.), Requests for Admission § 9.15.) Furthermore, it is well established "that any doubts in ruling on a motion to withdraw or amend an admission [under section 2033.300] must be resolved in favor of the moving party. The record here does not clearly establish that [the defendant supermarket's] mistake in admitting the matter was inexcusable or show that the withdrawal of the admission would substantially prejudice the [plaintiffs], so the policy

10

in favor of trial on the merits compels the conclusion that the motion to withdraw the admission should have been granted." (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1408, fn. omitted.)

The same is true here. As counsel for Safeway declared, the parties had been aware of Safeway's position and defense—that the accident could not have happened as Harmon testified—for months and each had retained its own expert to explain how the injury could have occurred despite the height discrepancy between the handle and the basket. All witnesses had been disclosed and deposed. No additional discovery costs were incurred. The court did not abuse its discretion in granting Safeway's motion to withdraw admissions Nos. 4 and 5.

## B. *Cost of Proof Sanctions*

Harmon contends that the court erred in refusing to assess cost of proof sanctions, including reasonable attorney's fees, pursuant to section 2033.420, to reimburse him for the cost of having to prove liability and causation in connection with the accident. Harmon moved for cost of proof sanctions in the sum of $51,269.20 in connection with his Requests for Admissions – Set Two, in which he asked Safeway to admit—and Safeway denied—that it was entirely responsible for the accident and that Harmon was not contributorily negligent.[6] Section 2033.420 provides in relevant part: "(a) If a party fails to admit the . . . truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves . . . the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. [¶] (b) The court shall make this order unless it finds any of the following: [¶] . . . [¶] (3) The party failing to make the

---

[6] Those requests sought admissions that: " 'No. 1: Liability and legal responsibility for the subject accident of May 17, 2009 . . . are entirely yours. [¶] No part of the liability or legal responsibility for the subject accident is attributable to plaintiff.' "

11

admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."

"The determination of whether there are good reasons for the denial, whether the requested admission was of substantial importance, and the amount of the expenses, if any, are all within the discretion of the trial court. [Citation.]" (2 Witkin, Cal. Evidence (5th ed. 2012) Discovery, § 177, p. 1152, citing *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 508; accord, *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1275-1276 ["We review the court's ruling for an abuse of discretion."].)

Although the record before us is incomplete, containing none of Harmon's trial testimony, it nevertheless provides substantial evidence to support the trial court's determination that Safeway had reasonable ground to believe that it would prevail on the question of liability and comparative fault. The court reasonably may have read the request for admissions as going solely to the question of comparative fault. The record before us contains a declaration by Safeway's counsel in opposition to the motion for cost of proof sanctions which included portions of Harmon's deposition. In that deposition Harmon testified that he "didn't see anything approaching" before he was hit by the carts, but that he heard something "at the last minute." Jones, the courtesy clerk, testified at trial that he believed he yelled out a warning to Harmon, but that the carts made a "really loud noise." Jones opined it was reasonable that Harmon did not hear his warning. The question of comparative fault, which encompasses questions of whether Harmon heard either Jones's warning shout or the clatter of the carts coming toward him in time to take evasive action, was a question of fact for the jury. On this record, the court reasonably concluded that Safeway acted in good faith in denying these requests for admission.

Furthermore, Witkin reminds us that "[t]he basis for imposing sanctions is directly related to the purpose of requests for admissions, i.e., expediting trial by putting issues to rest. The statute is not a penalty; it is designed to reimburse reasonable expenses incurred in proving a matter encompassed in a request for admission where the admission was of substantial importance 'such that trial would have been expedited or shortened if the

12

request had been admitted.' ([*Brooks v. American Broadcasting Co., supra,* 179 Cal.App.3d at p. 509].)" (2 Witkin, Cal. Evidence, *supra,* Discovery, § 177, p. 1151.)

Harmon sought to recover as costs of proof sanctions money he paid to his experts, including his surgeon Cabayan, expenses incurred in deposing experts (both his and Safeway's) the cost of having his experts testify at trial, jury fees, court reporter's fees and 50 hours of trial preparation by counsel. There was no showing that he would have not incurred these expenses but for the need to establish Safeway's liability and legal responsibility and his lack of comparative fault. For example, Dr. Cabayan and the economic experts whose costs Harmon sought to recoup in his motion, provided no testimony regarding the occurrence of the accident or any issue of comparative fault at all. Nor did the experts both parties retained to opine whether the accident could have occurred as Harmon described, have anything relevant to say on the issue of comparative fault.

On appeal, Harmon also folds into his argument a claim that the court erred in refusing to award him the costs he incurred proving Safeway was entirely liable and he had no comparative fault responsibility (Requests for Admissions – Second Set, Nos. 1 & 2), *when it allowed Safeway to withdraw admissions* Nos. 4 and 5 from the initial set of admissions. "A court may impose just conditions on the withdrawal or amendment of admission. Such conditions may include permitting the requesting party to pursue additional discovery relating to the matter involved in the withdrawn or amended admission, or shifting costs of such additional discovery to the party withdrawing or amending the admission. [Citation.]" (Lambden et al., Cal. Civil Practice – Procedure, *supra,* at § 13:178.) Harmon apparently sought none of these remedies in opposing Safeway's request to withdraw its admissions Nos. 4 and 5.

In denying plaintiff's motion for cost of proof sanctions, the court observed that "plaintiff could have sought more time to regroup or other remedy at the time, but chose not to do so. And those liability issues for which plaintiff Harmon now seeks redress for costs of proof were very much in play through the trial which ultimately resulted in a finding of physical responsibility but minimal financial liability on defendant Safeway's

13

part. There is no basis for sanctions." The trial court did not abuse its discretion in granting Safeway's motion to withdraw admissions and in refusing to award Harmon cost of proof sanctions.

## II. Denial of Motions for Additur, New Trial,[7] and JNOV

As described, the jury found Safeway was negligent and that Safeway's negligence was a substantial factor in causing harm to Harmon. Harmon assumes that the jury necessarily found the harm caused by the cart collision was the worsening of his arthritis symptoms and that such injury made necessary the thumb surgery that followed. Such is not the case.

Harmon's theory of the case was that he was more susceptible to injury because of his preexisting condition and therefore entitled to all the damages that were proximately caused by Safeway's negligence. We agree with this general statement of the law. The jury was instructed on aggravation of a preexisting condition or disability in accordance with CACI No. 3927 as follows: "William Harmon is not entitled to damages for any physical or emotional condition that he had before Safeway's conduct occurred. However, if William Harmon had a physical or emotional condition that was made worse by Safeway's wrongful conduct, you must award damages that will reasonably and fairly compensate him for the effect on that condition."

We review the record in the light most favorable to the prevailing party. When so viewed, it is apparent the jury concluded the injury to Harmon caused by the cart incident was the bruising of his arm, resulting in his visits to the E.R., to his personal physician, and to his physical therapist. The jury could well determine on the evidence before it that Harmon's degenerative arthritis was not caused to flare or made worse in any way by Safeway's wrongful conduct. Substantial evidence supporting the jury's verdict is found in our description of the facts above, and particularly in the expert testimony of Dr.

---

[7] "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (§ 657, subd. 7.)

14

Stuart. Consequently, the damages awarded by the jury were reasonable and the trial court did not abuse its discretion in denying Harmon's postverdict motions challenging the damages as inadequate.

When an award of damages is challenged as either excessive or inadequate, similar standards apply: "The amount of damages awardable is a question of fact for the trier of fact (in a jury trial, committed first to the jury's discretion and next to the judge's discretion on a motion for new trial). . . [¶] The appellate court may interfere with the trier of fact's determination only where the damages award, or lack thereof, is 'totally unconscionable and without evidentiary justification.' [*Johnson v. Stanhiser* (1999) 72 [Cal.App.]4th 357, 361—default judgment awarding plaintiff $0 damages 'compels reversal and remand' where substantial evidence exists to establish prima facie case for damages]." (Eisenberg et al., Civil Appeals and Writs, *supra,* ¶ 8:139, 8-104 – 8-105.) Although a " 'passion or prejudice' " inquiry defies any precise formula for measuring adequacy of damages, we are still bound by the substantial evidence standard of review. (*Id.* at ¶ 8:140, p. 8-105.) " 'The reviewing court does not act de novo . . . the trial court's determination . . . is entitled to *great weight* because it is bound by the "more demanding test of *weighing conflicting evidence* than our standard of review under the substantial evidence rule . . ." *All presumptions favor the trial court's determination . . . , and we review the record in the light most favorable to the judgment . . .'* [Citations.]" (*Ibid,* quoting *Fortman v. Hemco, Inc*. (1989) 211 Cal.App.3d 241, 259; see also *Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 614—"We have very narrow appellate review of the jury's determination of the amount of compensation for the parents' loss of comfort and society"; *Mendoza v. City of West Covina* (2012) 206 Cal.App.4th 702, 720-721—"We usually defer to the jury's discretion unless the record shows inflammatory evidence, misleading instructions, or improper argument by counsel that would suggest the jury relied on improper considerations."].)

Measured by these standards, the damage award was supported by substantial evidence and we cannot say that the jury's damage award was " 'totally unconscionable

15

and without evidentiary justification.' " (*Johnson v. Stanhiser, supra,* 72 Cal.App.4th at p. 361.)

Harmon's contention that the jury did not award adequate damages for his medical and related expenses founders on our conclusion that substantial evidence supported the determination that the only injury caused by the cart incident was the bruise on Harmon's arm. That the jury awarded him only $1,250 for his physical therapy when the bill was $2,520 may be explained by the evidence that he had two physical therapy appointments. The jury could believe the first was for the bruise, but that the second was due to the unrelated, worsening arthritis. Similarly, the jury did not err in refusing to award greater damages for medical expenses or loss of earnings attributable to the surgery. Indeed, Safeway's expert opined there were *no* loss of earning. It appears the jury award of $1,080 for lost earnings indicates it believed he may have lost some time at work attributable to the bruise or the attendant medical appointments. Given the expert testimony that Harmon's income, without taking expenses into account, was approximately $2,500 to $3,000 a month, this award seems generous.

Harmon argues that a jury verdict that awards any amount for a plaintiff's medical expenses caused by defendant's negligence, but fails to award damages for pain and suffering is inadequate as a matter of law. He cites *Wilson v. R.D. Werner Co.* (1980) 108 Cal.App.3d 878, *Smith v. Moffat* (1977) 73 Cal.App.3d 86, and *Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, for this proposition. These cases all involved significant, undisputed injuries. (*Wilson*, at p. 880 [fractured elbow and both wrists required surgery as well as permanent impairment of function]; *Capelouto*, at p. 891 [long-lasting, life-threatening infection incurred by infant in the hospital]; *Smith*, at pp. 93-94 [where liability was hotly disputed retrial required where the jury rendered a compromise verdict awarding general damage award of $5,000 to young child whose mother had died as a result of medical negligence].)

The jury's refusal to award Harmon non-economic damages for pain and suffering indicates the jury's determination that any such pain and suffering attributable to the bruise was minimal. "In some cases, courts have found jury awards which fail to

16

compensate for pain and suffering inadequate as a matter of law. (*E.g., Haskins v. Holmes* (1967) 252 Cal.App.2d 580, 585-586 (*Haskins* ) [award insufficient where plaintiff sustained severe head injuries necessarily requiring surgery, but the trial judge awarded only $88.63 in excess of the plaintiff's actual medical expenses, in effect 'allowing nothing for pain and suffering'; it was 'patently obvious' that 'substantial pain, suffering, shock and inconvenience' necessarily and inevitably accompanied the injuries].)  The courts have also stated, however, that an award that does not account for pain and suffering is 'not necessarily inadequate as a matter of law' (*id*. at p. 586), and that '[e]very case depends upon the facts involved.' (*Miller v. San Diego Gas & Elec. Co.* (1963) 212 Cal.App.2d 555, 558 (*Miller* ).)

"The controlling rule, we believe, was best stated in *Miller*[*, supra,* 212 Cal.App.2d 555], which affirmed a jury verdict that made no allowance for pain and suffering.  *Miller* distilled this principle from the precedents it reviewed:  Cases finding an award inadequate for failure to account for pain and suffering 'involve[ ] situations where the right to recover was established and . . . there was also proof that the medical expenses were incurred because of defendant's negligent act.' (*Miller, supra*, 212 Cal.App.2d at p. 558.)  In such situations, *Miller* concluded, '[i]t is of course clear that . . . a judgment for no more than the actual medical expenses occasioned by the tort would be inadequate.' (*Ibid*.)  On the other hand, a verdict may properly be rendered for an amount less than or equal to medical expenses in cases where, 'even though liability be established, a jury . . . may conclude that medical expenses paid were not occasioned by the fault of the defendants." (*Id*. at p. 559; see also *Haskins, supra*, 252 Cal.App.2d at p. 586 [an award 'for the exact amount of, or even less than, the medical expenses is not necessarily inadequate as a matter of law, because in the majority of cases there is conflict on a variety of factual issues—whether plaintiff received any substantial injury or suffered any substantial pain, or whether the medical treatment was actually given or given as a result of the injuries, or reasonable or necessary'].)" (*Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 936-937, fns. omitted.)

The only testimony at all in the record before us with respect to relevant non-economic loss was that of Jones, who testified that Harmon yelled out in pain when he was hit. The limited record we review does not contain any testimony by Harmon. There is no other testimony that he suffered significant pain and suffering from the cart incident if, as we must, we assume the jury found that incident was *not* a substantial factor in Harmon's later pain related to the arthritis or to his subsequent surgery.

In denying Harmon's motions for additur, new trial and cost of proof sanctions, the judge stated: "Juries are, by definition, fallible in that they are made up of human beings, but they almost invariably 'get it right' when they collectively put their heads together to work on a verdict. It is this court's opinion that their verdict in this case rested on solid ground, accepting testimony from both sides and following the law to its logical conclusion based on who they believed and what their ultimate findings of truth were. There is absolutely no basis to disturb the majesty of their labors." We agree.

Harmon contends that the court erred in refusing to grant a new trial where the jury failed to compensate him for all his medical expenses and refused to award him anything for his general damages. Therefore, he argues that the verdict was inconsistent (§ 657, subd. 6)[8] and that the jury refused to follow the court's instruction on causation. This claim rests on the premise that his injury included the triggering of worsening of his arthritic thumb symptoms, requiring surgery. Having rejected that premise, we also reject this contention as well.

We similarly reject Harmon's contention that the court erred in refusing to grant his motion for JNOV. Once again, he premises his claim on the jury's having found Safeway negligent and that such negligence was a substantial factor in Harmon's injury. He contends that once the jury made these findings it could not legally award him less

---

[8] Section 657, subdivision 6 provides in relevant part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial rights of such party: [¶] . . . [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law."

18

than all his special damages and could not legally award him nothing for his pain and suffering. Again, he assumes the injury caused by the cart collision is the worsening of his arthritis necessitating his subsequent surgery, arguing that he "had to endure an operation, undergo general anesthesia and then, months of physical therapy, directly as the result of the subject accident." We have previously rejected that claim.

### III. Award of Section 998 Costs to Safeway

Harmon challenges the court's award to Safeway of its section 998 costs. He raises no challenge to the amount of costs awarded, but contends only that the award is unjust because the court allowed Safeway to withdraw its admissions and because he reasonably rejected Safeway's $100,000 settlement offer where, at the time he rejected the offer, Safeway had admitted liability and his special damages totaled $87,504.35.

"The policy behind section 998 is 'to encourage the settlement of lawsuits prior to trial.' [Citations.] To effectuate this policy, section 998 provides 'a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' [Citation.] At the same time, the potential for statutory recovery of expert witness fees and other costs provides parties 'a financial incentive to make reasonable settlement offers.' [Citation.] Section 998 aims to avoid the time delays and economic waste associated with trials and to reduce the number of meritless lawsuits. [Citations.]" (*Martinez v. Brownco Construction Co., Inc.* (2013) 56 Cal.4th 1014, 1019.)

The law is clear: " 'A prevailing party who has made a valid pretrial offer pursuant to Code of Civil Procedure section 998 is eligible for specified costs, so long as the offer was reasonable and made in good faith. [Citation.]' [Citation.] 'Whether a section 998 offer was reasonable and made in good faith is a matter left to the sound discretion of the trial court, and will not be reversed on appeal except for a clear abuse of discretion.' (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 450.) ' "In reviewing an award of costs and fees under Code of Civil Procedure section 998, the appellate court will examine the circumstances of the case to determine if the trial court abused its discretion

19

in evaluating the reasonableness of the offer or its refusal." [Citation.]' [Citation.] On appeal, the burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown along with a miscarriage of justice, a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. [Citation.] Such a discretionary ruling will not be disturbed on appeal absent a showing that discretion was exercised in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*Najera v. Huerta* (2011) 191 Cal.App.4th 872, 877-878.)

"An important factor in deciding whether a section 998 offer is unreasonable or in bad faith is whether the offeree was given a fair opportunity to intelligently evaluate the offer. As stated in *Elrod v. Oregon Cummins Diesel, Inc.* (1987) 195 Cal.App.3d 692 at page 699: '[T]he section 998 mechanism works only where the offeree has reason to know the offer is a reasonable one. If the offeree has no reason to know the offer is reasonable, then the offeree cannot be expected to accept the offer.' (See also *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 135–136.) As similarly expressed in *Wilson v. Wal–Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, [at page 390]: '[L]itigants should be given a chance to learn the facts that underlie the dispute and consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial.' " (*Najera v. Huerta, supra,* 191 Cal.App.4th at p. 878.)

Hence, the focus of the court is not upon whether plaintiff reasonably rejected the offer. Rather, the court must determine whether the offer to compromise was reasonable and whether the plaintiff had the opportunity to intelligently evaluate it. Implicit in Harmon's challenge is his claim that he could not have intelligently evaluated the offer because, when it was made, Safeway had admitted liability and he had incurred substantial medical expenses. Again, Harmon refuses to acknowledge the importance of the question of causation—that is, whether his arthritis was made worse by the cart collision. That issue was at the heart of this case. It remained a contentious issue throughout this litigation and was the issue upon which his case ultimately foundered.

20

In granting Safeway's motion to enforce section 998, the court observed: "[D]efendant did what [section] 998 was precisely designed to do, namely, get a genuinely good faith offer on the table for plaintiff to consider before taking the gamble of the uncertainty of trial. Defendant Safeway offered $100,000[,] which, having heard the case, appears to have been eminently reasonable. Despite the offer's expiration, defendant Safeway once again made the offer at the Mandatory Settlement Conference, which was once again rejected by plaintiff William Harmon. [¶] Clearly it was plaintiff Harmon's right to reject those offers and take this matter to trial, but, having done so, he must suffer the consequences of the meager verdict and the overwhelming of same by the legitimate costs that Safeway incurred. As the court has suggested, this was a gamble by plaintiff Harmon and the gamble did not pay off. He was not 'playing with the house's money' here. And whether defendant Safeway is a multi-million dollar corporation or simply an individual of modest means, the company has the right to expect that a rejection of their good faith offer would trigger the consequences set forth in the statute should the verdict fall short of the mark."

In the circumstances of this case, we cannot conclude that the trial court abused its discretion in determining that Safeway's offer was "eminently reasonable" and in awarding Safeway its section 998 costs following rejection of its settlement offer.

## DISPOSITION

The judgment is affirmed. Safeway is awarded its costs on appeal.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Brick, J.*


       * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22