[No. A120678. First Dist., Div. Five. Mar. 30, 2009.]

MAXLYN CADLO, Plaintiff and Appellant, v.
METALCLAD INSULATION CORPORATION et al., Defendants and
Respondents.

## COUNSEL

Brayton Purcell, Alan R. Brayton, Lloyd F. LeRoy and David W. Fermino for Plaintiff and Appellant.

McKenna Long & Aldridge, Lisa L. Oberg and Sara M. Parker for Defendant and Respondent Metalclad Insulation Corporation.

Hassard Bonnington and Philip S. Ward for Defendant and Respondent John Crane Inc.

## OPINION

SIMONS, J.—After two defendants in a personal injury case rejected the plaintiffs' offers to compromise (Code Civ. Proc., § 998), the jury returned an award of damages against the defendants that exceeded the plaintiffs' offers. Civil Code section 3291[1] provides that if a defendant does not timely accept a Code of Civil Procedure section 998 offer to compromise (hereafter 998 offer) and the plaintiff obtains a more favorable judgment, the plaintiff is entitled to specified annual interest. Relying on section 3291, the trial court determined defendants Metalclad Insulation Corporation (Metalclad) and John Crane Inc. (Crane) (collectively respondents), are jointly and severally liable for prejudgment interest on the judgment. Plaintiff Maxlyn Cadlo (appellant), individually and as successor in interest to decedent Anthony Cadlo,[2] contends that Metalclad and Crane should each be liable for such

---

[1] All undesignated section references are to the Civil Code.

[2] Solely for convenience, we refer to decedent Anthony Cadlo as "Anthony." No disrespect is intended.

prejudgment interest on the entire judgment. We reject the contention and affirm.

## BACKGROUND

In September 2002, appellant and Anthony filed a complaint against respondents for Anthony's asbestos-related personal injury and appellant's loss of consortium. On November 19, appellant and Anthony served Metalclad with a 998 offer in the amount of $149,998. On October 29, 2003, appellant and Anthony served Crane with a 998 offer in the amount of $112,498. Respondents rejected the 998 offers and the case proceeded to trial.

On March 22, 2005, the jury returned a special verdict in favor of appellant and Anthony. The jury awarded Anthony $87,304.74 in past medical expenses, $174,000 in future medical expenses, $1,412,400 in nonmedical economic damages and $4 million in noneconomic damages.[3] It also awarded appellant $3 million in loss of consortium damages. The jury allocated 3 percent of the fault for appellant's and Anthony's injuries to Crane and 4 percent of the fault to Metalclad. On March 25, the court executed a judgment on the special verdict.

Anthony died on March 24, 2005. On September 6, the court entered judgment nunc pro tunc to March 23 in favor of appellant and Anthony. The judgment awarded Anthony $1,673,704.74 in economic damages against respondents jointly and severally, $120,000 in noneconomic damages against Metalclad severally, and $160,000 in noneconomic damages against Crane severally. The judgment awarded appellant $120,000 in noneconomic damages against Metalclad and $90,000 in noneconomic damages against Crane.

On September 19, 2005, the court credited respondents for appellant's settlements with other defendants and for the Veterans Administration benefits paid to Anthony prior to his death. The net economic damage award, for which respondents were jointly and severally liable, was $1,362,842.11. The

---

[3] " '[E]conomic damages' means objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities." (§ 1431.2, subd. (b)(1).) " '[N]on-economic damages' means subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (§ 1431.2, subd. (b)(2).)

court awarded appellant $68,628.01 in expert witness costs against respondents, jointly and severally, and ruled appellant was entitled to prejudgment interest at the rate of 10 percent per annum, from October 29, 2003, as to Crane, and from November 19, 2002, as to Metalclad, until satisfaction of judgment. (Code Civ. Proc., § 998, subd. (d); Civ. Code, § 3291.) The costs and interest were made part of the September judgment entered nunc pro tunc.

Respondents unsuccessfully appealed the judgment on various issues, including the validity of the 998 offers made to them. (*Cadlo v. Metalclad Insulation Corp.* (2007) 151 Cal.App.4th 1311 [61 Cal.Rptr.3d 104] (*Cadlo I*).)

Respondents stipulated to satisfy the joint and several economic damages award by the same allocation ratio made by the jury (4 percent of fault to Metalclad, 3 percent of fault to Crane). Thus, Metalclad agreed to compensate appellant for 57 percent of the economic damages award and Crane agreed to compensate appellant for 43 percent of the economic damages award.

This court's remittitur in *Cadlo I* issued on October 29, 2007. On that date, Metalclad tendered $1,659,050.02 to appellant along with a demand for satisfaction of the judgment. Metalclad asserted that, of the sum tendered, $1,110,292 represented its share of total liability on the judgment excluding interest,[4] and $548,758.02 represented its share of section 3291 prejudgment interest on the judgment from November 19, 2002, the date Metalclad was served with appellant and Anthony's 998 offer, through October 29, 2007, the date Metalclad tendered full payment.[5] On November 2, 2007, Crane tendered $1,170,904.70 to appellant in satisfaction of its share of the judgment. Crane asserted that, of the sum it tendered, $836,360.51 represented its share of total liability on the judgment excluding interest, and $334,544.19

---

[4] Metalclad stated that the $1,110,292 amount of its total liability represented: $776,820, 57 percent of the joint and several economic damages award; $14,354.03, 57 percent of the joint and several costs award); $39,117.97, 57 percent of the joint and several expert fee award; $160,000, noneconomic damages awarded severally; and $120,000, loss of consortium awarded severally.

[5] Metalclad arrived at the $548,758.02 amount of prejudgment interest it owed by multiplying its total liability on the judgment ($1,110,292) by 10 percent, dividing that amount by 365 days per year to determine the daily rate of accrued interest ($304.19), and then multiplying the daily interest rate by 1,804 (the number of days between Nov. 19, 2002, and Oct. 29, 2007).

represented its share of section 3291 prejudgment interest on the judgment from October 29, 2003, the date Crane was served with appellant and Anthony's 998 offer, through October 29, 2007.[6] Appellant refused respondents' tenders of payment.

On November 15, 2007, respondents each moved for a determination on the final judgment and for entry of satisfaction of judgment. Appellant argued that respondents are *each* liable for prejudgment interest under section 3291 on the *full* amount of the judgment regardless of how they decide to apportion payment of the judgment between themselves. Respondents argued, and the trial court agreed, that they are "jointly and severally liable for prejudgment interest" under section 3291 at an annual rate of 10 percent. In its written order the court expressly "reject[ed appellant's] assertion that [she] is entitled to recover interest on the judgment once from Metalclad and once again from . . . Crane, as such recovery results in double interest." The court found that Metalclad satisfied its share of the judgment on October 29 by tendering payment of $1,659,050.02 to appellant, and prejudgment interest as to Metalclad stopped accruing on that date. The court ordered Crane to retender payment in the amount of $1,170,904.88 to appellant, and found that prejudgment interest as to Crane stopped accruing on the date of its original tender, November 2.

Appellant filed a timely appeal of the court's November 29, 2007 order granting respondents' motions for determination of final judgment and for satisfaction of judgment.

## DISCUSSION

Appellant contends section 3291 requires each respondent to pay 10 percent prejudgment interest on the full amount of the judgment beginning on the date of its respective 998 offer. Respondents rejoin that appellant's approach to prejudgment interest would result in an award of 20 percent interest to appellant in violation of the policies underlying section 3291 and in violation of article XV, section 1, subdivision (2) of the California Constitution.[7] The issue is one of first impression.

---

[6] Crane utilized the same methodology as Metalclad in calculating its share of prejudgment interest on the judgment.

[7] Article XV, section 1, subdivision (2) of the California Constitution provides in part: "The rate of interest upon a judgment rendered in any court of this State shall be set by the Legislature at not more than 10 percent per annum. . . . [¶] . . . [¶] The provisions of this section shall supersede all provisions of this Constitution and laws enacted thereunder in conflict therewith."

Section 3291 provides in relevant part: "In any action brought to recover damages for personal injury . . . , it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure[8] which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

■ We begin by construing section 3291; thus, our review is de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960].) " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'The words of the statute are the starting point.' [Citation.] If the words are 'clear and unambiguous,' then we need look no further. [Citation.] If, however, the statutory language is not clear, then 'we may resort to extrinsic sources, such as the legislative history.' [Citation.]" (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 531 [117 Cal.Rptr.2d 220, 41 P.3d 46] (*Hess*).)

■ The words of the statute are clear and unambiguous: *the judgment* shall bear interest at the legal rate. Though two defendants were found liable by the jury, only one judgment resulted, and the interest imposed by section 3291 is to be calculated on that amount.

Even if, as appellant argues, the provision could reasonably be interpreted to require each defendant to pay interest on the total amount of the single judgment, the statute's purpose would not justify construing it in that way. Section 3291 serves two purposes. It encourages settlements in personal injury cases by creating " 'an incentive for recalcitrant defendants to accept reasonable settlement offers in a timely manner.' " (*Hess, supra,* 27 Cal.4th at p. 533, quoting Governor's Off., Dept. of Legal Affairs, Enrolled Bill Rep. on Sen. Bill No. 203 (1981–1982 Reg. Sess.) Apr. 6, 1982, p. 2; see also *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663 [25 Cal.Rptr.2d 109, 863 P.2d 179] (*Lakin*).) In addition, section 3291 has a compensatory purpose: "to provide just compensation to the injured party for loss of use of

---

[8] Code of Civil Procedure section 998, subdivision (b), provides in relevant part: "Not less than 10 days prior to commencement of trial . . . , any party may serve an offer in writing upon any other party to the action to allow judgment to be taken . . . in accordance with the terms and conditions stated at that time."

the [damage] award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury." (*Lakin*, at p. 663; accord, *Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1997) 60 Cal.App.4th 13, 20 [70 Cal.Rptr.2d 41] (*Steinfeld*).)

■ Appellant focuses on certain cases to characterize the statute's purpose as " 'penaliz[ing] those who refuse reasonable settlement offers.' " (*Steinfeld, supra*, 60 Cal.App.4th at p. 20.) Appellant then argues, with no citation to authority, "Under section 3291 it is what each defendant pays (10 percent) that is important, not what appellant ultimately receives for having properly participated in the Code of Civil Procedure section 998 statutory construct . . . ." This mischaracterizes the legislative intent. Section 3291 imposes a penalty only in the sense that it provides a disincentive to defendants to unreasonably reject settlement offers. (*Steinfeld*, at p. 20.) In calculating the size of the "penalty" however, courts have carefully limited it to an amount that compensates the plaintiff for the loss of use of the ultimate damage award. (*Lakin, supra*, 6 Cal.4th at pp. 663–664 [the compensatory purpose of § 3291 would not be served by awarding prejudgment interest on punitive damages]; *Deocampo v. Ahn* (2002) 101 Cal.App.4th 758, 782–783 [125 Cal.Rptr.2d 79] [awarding the plaintiff prejudgment interest under § 3287 in addition to such interest under § 3291 would not serve the compensatory purpose of making the plaintiff whole as of the date of the injury]; *Hess, supra*, 27 Cal.4th at pp. 531–533 [accrued prejudgment interest under § 3291 is not part of the judgment, and therefore a plaintiff may not obtain interest on this prejudgment interest, i.e., compound interest].)

"[A] plaintiff is entitled to interest on *one* amount—'the judgment.' " (*Hess, supra*, 27 Cal.4th at p. 531.) Imposing this limitation ensures that the prejudgment interest obligation does not create undue pressure on defendants to settle. (*Id.* at p. 533.) Appellant's argument that, in construing section 3291 we need not consider the amount plaintiffs receive, ignores the compensatory policy underlying section 3291. It also would result in a windfall to appellant. Section 3291 creates a penalty to be imposed on those defendants who reject reasonable settlement offers, but limits that penalty to making the plaintiff whole as of the date of injury.

■ The trial court correctly awarded appellant 10 percent prejudgment interest under section 3291 against respondents jointly and severally.[9]

---

[9] In light of our resolution of this issue on the basis of the statutory language of section 3291, we need not consider whether requiring respondents to each be liable for 10 percent interest on the entire amount of the judgment violates article XV, section 1, subdivision (2) of the California Constitution.

## DISPOSITION

The judgment is affirmed. Costs to respondents.

Jones, P. J., and Needham, J., concurred.