Filed 6/9/15 Unmodified opinion attached

**<u>CERTIFIED FOR PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LENA LEE et al.,<br><br>      Plaintiffs and Appellants,<br><br>           v.<br><br>JOSEPH M. SILVEIRA et al.,<br><br>      Defendants and Respondents. | F067723<br><br>(Super. Ct. No. 652893)<br><br>**ORDER MODIFYING OPINION**<br>**[No Change in Judgment]** |

It is hereby ordered that the published opinion filed on May 15, 2015, be modified as follows:

1.      On page 2, the third full paragraph, beginning "For purposes of" is deleted and the following paragraph is inserted in its place:

> For purposes of determining whether a defendant "fail[e]d to obtain a more favorable judgment" under section 998, we conclude that any negotiated rate differential included in a jury's verdict should be subtracted from the award before the comparison is made to the offer to compromise "for the simple reason that the injured plaintiff did not suffer any economic loss in that amount." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 548 (*Howell*).)  In other words, the negotiated rate differential is not part of the judgment "obtained" in the litigation.

2.      On page 3, the second full paragraph, beginning "Before this personal injury" is deleted and the following paragraph is inserted in its place:

> Before this personal injury lawsuit was filed, the California Supreme Court granted review of the decision in *Howell v. Hamilton Meats &*

*Provisions, Inc.* on March 10, 2010, S179115, to address whether the "negotiated rate differential"—the difference between the full billed rate for medical care and the actual amount paid as negotiated between a medical provider and an insurer—is a collateral source benefit under the collateral source rule and thus recoverable by the plaintiff as economic damages.

3.      On page 3, footnote 2 is deleted in its entirety, which will require renumbering of all subsequent footnotes.

There is no change in judgment.


_____
                                                        FRANSON, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
POOCHIGIAN, J.

Filed 5/15/15 Unmodified opinion

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LENA LEE et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>JOSEPH M. SILVEIRA et al.,<br><br>    Defendants and Respondents. | F067723<br><br>(Super. Ct. No. 652893)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County. Roger M. Beauchesne, Judge.

Alan Charles Dell'Ario ; The Brandi Law Firm and Daniel Dell'Osso for Plaintiffs and Appellants.

Morris Polich & Purdy, Richard H. Nakamura, Jr.; Law Office of Murray M. Aron and Murray M. Aron for Defendants and Respondents.

-ooOoo-

In this appeal, a personal injury plaintiff contends the trial court erred in denying her request for expert witness fees and prejudgment interest under Civil Code section 3291. The plaintiff argues she was entitled to such fees and interest, which totaled over $350,000, because the defendants "fail[ed] to obtain a more favorable judgment" (Code Civ. Proc., § 998)[1] than the $1 million offer to compromise she made under section 998.

The plaintiff contends the proper comparison is between her offer and an intermediate judgment based on a jury verdict that included an award for past medical expenses in the full amount billed to her, rather than the smaller amount actually paid by her insurer under the rates the insurer negotiated with the medical providers. This negotiated rate differential (i.e., the difference between the amounts billed and the amounts paid) totaled $165,262. When it was subtracted from the verdict, the plaintiff recovered less than $1 million in damages.

For purposes of determining whether a defendant failed to obtain a more favorable judgment under section 998, we conclude that any negotiated rate differential included in a jury's verdict should be subtracted from the judgment or award before it is compared to the offer to compromise "for the simple reason that the injured plaintiff did not suffer any economic loss in that amount." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 548 (*Howell*).) In other words, defendants did not "obtain" a judgment that included the negotiated rate differential.

In this case, the trial court correctly reduced the jury verdict by the negotiated rate differential before making the section 998 comparison and concluding the judgment obtained by the defendants was more favorable than the offer to compromise for $1 million.

We therefore affirm the judgment.

---

[1] All further statutory references are to the Code of Civil Procedure unless noted otherwise.

**FACTS AND PROCEEDINGS**

On April 29, 2008, plaintiff Lena Lee was injured when her GMC Yukon collided with a large manure spreader that defendant Joseph M. Silveira had pulled onto Ellenwood Road in front of her. Lee suffered fractures of her hips, leg, elbow and wrist and damage to associated nerves, ligaments and tendons. Attempts to settle Lee's claim before the lawsuit was filed were unsuccessful.

Before this personal injury lawsuit was filed, the California Supreme Court granted review of the decision in *Howell v. Hamilton Meats & Provisions, Inc.* on March 10, 2010, S179115. The Supreme Court stated it would consider the following issues:

> "(1) Is the 'negotiated rate differential'[—]the difference between the full billed rate for medical care and the actual amount paid as negotiated between a medical provider and an insurer—a collateral source benefit under the collateral source rule, which allows plaintiff to collect that amount as economic damages, or is the plaintiff limited in economic damages to the amount the medical provider accepts as payment? (2) Did the trial court err in this case when it permitted plaintiff to present the full billed amount of medical charges to the jury but then reduced the jury's award of damages by the negotiated rate differential?"[2] (See <http://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=1930127&doc_no=S179115>.)

In April 2010, Lee sued Joseph M. Silveira and Silveira Custom Farming (collectively, defendants).

---

[2] The Supreme Court subsequently granted review in other cases from the Courts of Appeal addressing whether write-offs obtained by insurance companies through negotiations with medical providers were recoverable by the insured as collateral source benefits. (*Yanez v. SOMA Environmental Engineering*, *Inc.,* review granted Sept. 1, 2010, S184846; *King v. Willmett*, review granted Oct. 13, 2010, S186151; *Felix v. Aronson* (Mar. 2, 2011, B218160) [nonpub. opn.], review granted May 11, 2011, S191874; *Cabrera v. E. Rojas Properties*, *Inc.*, review granted June 8, 2011, S191826) Once the California Supreme Court granted review, these cases could no longer be relied upon as authority. (Cal. Rules of Court, rules 8.1105(e)(1), 8.1115(a).)

On August 12, 2010, Lee's attorney served defendants with a section 998 offer to compromise in the amount of $1 million.[3] Defendants did not accept the offer which, by its terms, lapsed after 30 days.

On August 18, 2011, the California Supreme Court filed its opinion in *Howell*, *supra*, 52 Cal.4th 541 and held that the negotiated rate differential could not be recovered by a plaintiff as past medical expenses "for the simple reason that the injured plaintiff did not suffer any economic loss in that amount." (*Id*. at p. 548.) The court also stated the collateral source rule "does not expand the scope of economic damages to include expenses the plaintiff never incurred." (*Id*. at p. 549.)

About a year after the *Howell* decision, a jury trial began in this case. Defendants filed a motion in limine requesting the trial court permit only the introduction into evidence of *paid* medical bills. The court denied the motion, concluding that the amount of billed medical expenses was relevant to the question of reasonable past medical expenses, future medical expenses and pain and suffering.[4] The court indicated that the verdict would be reduced to reflect the amount of paid medical expenses. Counsel then stipulated that the amount of billed medicals was $274,514.12 and the amount of paid medicals for Lee was $109,251.61.

In September 2012, the jury completed a special verdict form awarding Lee damages totaling $1,027,014. The jury explicitly found the past economic loss for Lee's medical expenses totaled $274,514. This was the amount the parties stipulated was billed to her.

---

[3] About 20 months later, shortly before the original trial date, defendants made a section 998 offer to compromise in the amount of $400,001.

[4] The court noted that the evidentiary issue concerning the relevancy of the *billed* amounts was not addressed in *Howell*. (See *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1154 [appellate court upheld trial court's denial of defendant's motion in limine to prevent the jury from receiving evidence of medical bills that exceeded the amount paid to medical providers on plaintiff's behalf].)

On October 5, 2012, the trial court filed a document labeled "JUDGMENT ON JURY VERDICT." It stated that "Lee is entitled to judgment against Joseph M. Silveira in the amount of $1,027,014" and her daughter was entitled to $1,979. It also stated: "The judgment is subject to amendment following post trial hearing concerning: 1) Plaintiffs' motion for pre-judgment interest and costs; and 2) the stipulated reduction for plaintiffs' past medical expenses."

Defendants immediately filed a posttrial motion for reduction of jury verdict that requested the award for past medical expenses be reduced from the amount charged (i.e., $274,514.12) to the amount actually paid by Lee's insurer (i.e., $109,251.61). Lee agreed the deduction for the negotiated rate differential of $165,262 eventually should be made, but opposed defendants' motion on the ground her expert fees and prejudgment interest under Civil Code section 3291 should be determined *before* the negotiated rate differential was deducted.

The trial court agreed with Lee's position. The court's ruling from the bench was confirmed in a December 2012 order stating defendants were entitled to a $165,262.51 reduction of the judgment, but the reduction would be made after determining Lee's entitlement to prejudgment interest and expert witness fees under section 998.

Lee filed a memorandum of costs, which included a request for expert witness fees totaling $100,300. Defendants filed a motion to strike and tax costs, which was heard by the trial court in January 2013. After the hearing, the court filed a written ruling denying defendants' motion to strike and tax costs.

On February 21, 2013, the court filed a judgment that included Lee's costs and expert witness fees and excluded the negotiated rate differential. The amount of the judgment was "$987,398.26 plus pre-judgment interest in the amount of $250,231.07."

In April 2013, defendants filed a motion to vacate and modify the judgment under section 663. The motion was brought on the ground of "[a]n incorrect or erroneous legal basis for the decision, not consistent with or supported by the facts." Defendants argued

5.

there should be no award of costs or prejudgment interest under section 998 because the negotiated rate differential should have been deducted from the jury's verdict before the court evaluated Lee's courtroom success. Defendants argued the legally correct amount of the judgment was $887,098.26.

In May 2013, the trial court filed a written ruling that granted defendants' motion to vacate and modify the judgment. On May 31, 2013, a third judgment was entered in the amount of $887,098.26. This amount excluded Lee's expert witness fees and prejudgment interest under Civil Code section 3291.

Lee appealed from this judgment and the order granting defendants' motion to vacate and modify the judgment.

## DISCUSSION

### I.      STANDARD OF REVIEW

The question presented in this appeal involves application of section 998, subdivision (d) and whether defendants failed "to obtain a more favorable judgment" than Lee's offer to compromise for $1 million.

Issues of statutory construction as well as the application of that construction to an undisputed set of facts are questions of law subject to independent review on appeal. (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 391.) Therefore, we will conduct an independent review of the issue presented.

### II.      JUDGMENTS AND COMPARISONS

#### A.      Contentions of the Parties

Lee contends that section 998 contemplates "a comparison of the section 998 offer with the circumstances as they existed when [defendants] had the opportunity to accept the offer." (Boldface omitted.) Lee also contends that, during the relevant time frame, case law held that a plaintiff's damages included the negotiated rate differential. Lee supports her position with the following quote: "Considering the amount of the verdict

reduced only by offsets to which it was subject at the time the section 998 offer was outstanding is consistent not only with the purpose but is implicit in the language of section 998." (*Guerrero v. Rodan Termite Control, Inc.* (2008) 163 Cal.App.4th 1435, 1441 (*Guerrero*).)

Defendants raise the following arguments. First, they contend that *Guerrero* is distinguishable from cases involving negotiated rate differentials and therefore the rationale used in *Guerrero* does not apply in this case. Second, they contend the test referring to the status of the litigation at the time of the offer is used to assess the validity or reasonableness of the offer, not to determine whether the judgment was more favorable. Third, defendants disagree with Lee about the status of the law at the time of the offer. In their view, *Howell* was retroactive and thus should be regarded as the applicable law at the time the offer was made. (See *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1334-1335 [*Howell* applied retroactively].)

Lee's reply brief asserts that the retroactivity of *Howell* is irrelevant to the analysis and the parties' success and failure in this litigation should be evaluated without regard to postoffer deductions from the judgment.

B.     Background: Section 998 and *Guerrero*

Section 998 is a cost-shifting statute that uses economic incentives to encourage pretrial settlements and avoid needless litigation. (*Barba v. Perez* (2008) 166 Cal.App.4th 444, 451.) One economic incentive involves expert witness fees, which ordinarily are not recoverable costs. A party who declines an offer to compromise under section 998 and fails to obtain a more favorable judgment may be compelled to pay the offeror's expert witness fees incurred during trial. (§ 998, subds. (c) & (d).) Also, personal injury defendants who refuse to settle before trial for less than the plaintiff recovers at trial must pay interest on the judgment at 10 percent annually from the date of

the settlement offer. (Civ. Code, § 3291; see *Cadlo v. Metalclad Insulation Corp.* (2009) 172 Cal.App.4th 1040, 1042.)

A major dispute in this case concerns whether the principles used in *Guerrero* should be extended to reductions based on negotiated rate differentials.

In *Guerrero*, the plaintiff who purchased a house with dryrot sued the home's seller, the real estate agent, and the home inspection firm. (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1438.) Ten months after the suit was filed, the inspection firm served the plaintiff with a section 998 offer to compromise for $5,000. (*Guerrero*, *supra*, at p. 1438.) The plaintiff did not accept the offer. (*Ibid.*) Over two years later, shortly before the start of trial, the plaintiff entered a judicially approved good faith settlement with the real estate agent for $34,000. (*Id.* at p. 1439.) The case went to trial against the inspection firm and the jury awarded $15,600 to the plaintiff. (*Ibid.*) The inspection firm then filed a motion under section 877 to offset the settlement amount against the verdict. (*Guerrero*, *supra*, at p. 1439.) The trial court granted the motion and reduced the judgment to zero. (*Ibid.*) The inspection firm moved to tax the costs the plaintiff incurred after its $5,000 offer to compromise was served. (*Ibid.*) The trial court denied the inspection firm's motion to tax costs. (*Ibid.*) The appellate court affirmed the denial. (*Id.* at p. 1446.)

In *Guerrero*, the issue presented on appeal was "whether, for the purpose of allocating costs under section 998, a plaintiff whose judgment is reduced to zero by operation of section 877 can be deemed to have 'obtain[ed] a more favorable judgment or award' than a rejected section 998 offer to pay $5,000." (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1440.) The appellate court determined the plaintiff had obtained a more favorable judgment, stating:

> "[I]n determining whether plaintiff obtained a 'more favorable judgment or award' than a section 998 offer, the objective of encouraging settlement requires consideration of the status of the litigation when the section 998 offer was submitted. In the present case, when [the inspection firm]

submitted its $5,000 offer early in the litigation, plaintiff had recovered nothing by way of settlement or otherwise and had a valid claim against [the inspection firm] that the jury later determined to be worth substantially more than the $5,000 than [the inspection firm] offered.  Plaintiff thus did not reject an offer that the outcome of trial indicates should have been accepted.  Even if [the inspection firm's] offer was not so low as to have been in bad faith, there is still no reason why [the inspection firm] should be rewarded for having submitted the offer, nor is there any reason to penalize plaintiff for having rejected it.  The costs that plaintiff incurred subsequent to rejecting the $5,000 offer were incurred in pursuit of a claim with a value of at least $15,600.  Regardless of the offset based on subsequent developments in the litigation, plaintiff was justified in rejecting the offer when he rejected it.

"The situation would have been very different if [the inspection firm] had submitted a section 998 offer for $5,000 after plaintiff had accepted $34,000 in settlement from Help–U–Sell. In that event, plaintiff would have been required to evaluate the likelihood of recovering at least $39,000 from [the inspection firm].  Had he rejected such an offer at that time, it would be entirely consistent with the objectives of section 998 to shift the burden of subsequently incurred costs to him.  However, because there had been no such settlement when [the inspection firm] made its offer, plaintiff had occasion to evaluate only the prospects of recovering more than $5,000.  Since plaintiff did in fact recover more than that amount and obtained a verdict against [the inspection firm] for more than that amount, there is no reason to give [the inspection firm] a windfall benefit because other defendants later decided to settle for an amount that offset plaintiff's verdict against it.

"… Considering the amount of the verdict reduced only by offsets to which it was subject at the time the section 998 offer was outstanding is consistent not only with the purpose but is implicit in the language of section 998." (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1441.)

Based on this analysis, the appellate court concluded the trial court correctly determined the plaintiff had obtained a judgment or award more favorable than what he would have received, at the time the section 998 offer was in effect, if he had accepted the offer.  (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1445.)  As a result, the court affirmed the decision that the inspection firm was not entitled to shift the cost burden to plaintiff pursuant to section 998.  (*Guerrero*, *supra*, at p. 1446.)

9.

C.      Analysis

*1.      State of the Law*

First, we consider the disagreement between the parties regarding the state of the law regarding the recovery of negotiated rate differentials at the time Lee made her section 998 offer to compromise.

Five months before Lee's attorney served defendants with the offer to compromise, the Supreme Court had granted review in *Howell*. Therefore, the law regarding the recovery of negotiated rate differentials was unsettled at the time of the offer. As a result, this uncertainty regarding recoverable damages was one of the factors an objectively reasonable attorney and client would have considered when evaluating the offer to compromise.

In reaching this conclusion, we reject the more extreme positions urged by the parties regarding the status of the law in August 2010. At that time, objectively reasonable persons could have made different predictions of how the Supreme Court would resolve the issue. Therefore, uncertainty existed as to how the Supreme Court would rule and how that ruling might affect pending cases.

Accordingly, Lee has not established one of the foundations for her position—namely, that at the time of her offer she was entitled to recover the negotiated rate differential.

*2.      Amount of Judgment or Award*

In *Guerrero*, the court addressed how to handle an offset to the damages awarded in the jury verdict based on a good faith settlement approved pursuant to section 877. That offset (1) was based on *money actually received by the plaintiff* from another defendant and (2) the money received related to damages that were compensable under applicable law.

In contrast, Lee received no money from another defendant and had no money paid on her behalf. Moreover, Lee did not suffer an economic loss in the amount of the

10.

negotiated rate differential. As a result, defendants in this case are not seeking a windfall benefit from money paid by a third party. Instead, defendants ask that the judgment in this case be evaluated based on what the law allowed Lee to recover. In defendants' view, to hold otherwise would subject them to additional liability based on the legally erroneous amount awarded by the jury.

Based on the dissimilarities between this case and the offset made in *Guerrero*, we conclude that *Guerrero*'s rule about evaluating whether a litigant obtained a "more favorable judgment" for purposes of section 998 before taking certain offsets does not extend to reductions for negotiated rate differentials. Therefore, our conclusion is based on the following statutory interpretation: When a jury's verdict awards damages for losses not suffered by the plaintiff or for damages not allowed by law, those damages must be excluded when determining whether the defendant failed "to obtain a more favorable judgment or award" for purposes of section 998, subdivision (d).

Our approach to *Guerrero* means that defendants in different lawsuits will be treated the same for purposes of section 998 regardless of (1) whether the trial court makes the reduction for the negotiated rate differential after the jury has rendered a verdict or (2) whether the jury is instructed that its award of reasonable past medical expenses shall not exceed the amount actually paid. These two categories of defendants would be similarly situated at the time of the offer to compromise and, therefore, we can identify no reason for treating defendants in the first category less favorably than defendants in the second category.

### 3.     *Statutory Text*

Because the issue presented in this case is ultimately one of statutory interpretation, we will explain our conclusion using the specific language appearing in section 998, subdivision (d).

The relevant text provides that a plaintiff may recover postoffer costs if "the defendant fails to obtain a more favorable judgment or award …."  (§ 998, subd. (d).) Therefore, the issue can be phrased as what judgment or award did the defendant *obtain*. The statute does not define the word "obtain" and, therefore, we infer that the Legislature intended it to be given its ordinary meaning.  The verb "obtain" means "to gain or attain possession or disposal of usu. by some planned action or method" and "to bring about or call into being : EFFECT."  (Webster's 3d New Internat. Dict. (1993) p. 1559, col. 2.) Therefore, the verb "obtain" suggests an active connection between the defendants' conduct of the litigation and the judgment achieved.

In this case, defendants' decision to reject the $1 million offer to compromise and go to trial brought about a judgment requiring them to pay $887,098.26.   They were not liable for (i.e., required to pay Lee) the $1,027,014 mentioned in the October 2012 judgment because that document expressly stated it was subject to amendment following the hearing concerning "the stipulated reduction for plaintiffs' past medical expenses." Furthermore, this statement about a reduction reflected the trial court's earlier handling of the motion in limine, where the court allowed evidence of the amount billed for medical expenses and stated it would implement *Howell* by reducing the award of past medical expenses to the amount paid.  Thus, the $1,027,014 figure in the October 2012 judgment was never more than a transitional figure and not the one ultimately obtained by defendants.  Instead, plaintiffs' plan of action to go to trial resulted in the judgment or award of $887,098.26 and this is the amount of the judgment they obtained for purposes of section 998.

This interpretation and application of the verb "obtain" is consistent with the result in *Guerrero*.  The plaintiff in *Guerrero* decided to go to trial against the inspection firm and obtained an award of $15,600 as a result of his plan of action and effort.  (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1439.)  The judgment or award for zero dollars ultimately

12.

entered against the plaintiff in favor of the inspection firm was the result of (i.e., obtained by) the postoffer settlement paid by real estate agent, not the inspection firm's efforts.

## III. PROCEDURAL ISSUE

### A. Motions under Section 663

The grounds for a motion to vacate a judgment are set forth in section 663, which provides in part:

> "A judgment or decree, when based upon a decision by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts; and in such case when the judgment is set aside, the statement of decision shall be amended and corrected."

### B. Contentions of the Parties

Lee contends defendants pursued the wrong remedy when they filed their motion to vacate and modify the February 2013 judgment under section 663. Lee argues that defendants' "proper remedy was to bring a motion for a new trial directed to the judgment entered October 5, 2012. [Their] non-statutory motion for a [negotiated rate differential] reduction effectively functioned as a motion for new trial, particularly in light of Lee's failure to object. [Citation.] When the trial court denied it, [defendants were] left with the choice of accepting the ruling or appealing. Another round of post-trial motions was not an option." In short, Lee contends "the court had no power to entertain the motion."

In response, defendants contend that Lee did not raise this issue below and, therefore, it should be deemed waived. Defendants also contend their motion for a reduction of jury verdict was not the equivalent of a motion for new trial because, among other things, the parties' stipulation rendered a new trial unnecessary. Defendants also contend the October 2012 judgment was tentative and left issues open and, therefore, the

13.

February 2013 judgment qualifies as a "judgment" subject to a motion to vacate under section 663.

    C.    <u>Analysis</u>

First, we agree with defendants that the document filed on October 5, 2012, and labeled "JUDGMENT ON JURY VERDICT" was not a final, appealable judgment. Its own terms indicated it was an interim or temporary description of the results of the jury trial and did not constitute a final resolution of the whole controversy. The document explicitly stated is was subject to amendment following a posttrial hearing concerning the stipulated reduction in Lee's past medical expenses.

Second, defendants' motion, which was labeled "POST-TRIAL MOTION FOR REDUCTION OF JURY VERDICT," was an appropriate way to address the legal issue left open in the October 2012 "JUDGMENT ON JURY VERDICT." (See *Sanchez v. Strickland* (2011) 200 Cal.App.4th 758 [defendant in auto accident case filed a motion for adjustment or reduction of verdict amounts to reflect amount of past medical expenses actually paid to medical providers]; see *Olsen v. Reid* (2008) 164 Cal.App.4th 200, 203, fn. 2 [what form a motion to reduce judgment should take is unclear and need not be decided because evidence did not demonstrate the amount plaintiff and her insurer actually paid; trial court erred in reducing the jury verdict].)

Third, because the October 2012 document was not a final judgment and the February 2013 document labeled "JUDGMENT ON JURY VERDICT" was a final judgment—the first entered in this case—defendants could challenge the legal correctness of that document by filing a motion to vacate a judgment under section 663 and the trial court had the power to hear and decide such a motion.

Therefore, we reject Lee's procedural argument that the trial court had no power to consider defendants' motion to vacate the judgment.

## DISPOSITION

The May 2013 judgment is affirmed.  Defendants shall recover their costs on appeal.

_____

FRANSON, J.

WE CONCUR:

_____

KANE, Acting P.J.

_____

POOCHIGIAN, J.